GORDON L. MUNDERLOH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WALTER H. POSCH AND RUTH POSCH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4230–65, 1739–66.    Filed June 26, 1967.

*David H. Goldberg*, for the petitioner in docket No. 4230–65.
Ruth Posch, pro se.
*Harvey I. Lapin*, for the respondent.

## OPINION

Kern, *Judge:* Periodic payments received by a divorced wife after a divorce decree in discharge of a legal obligation arising out of the marital relationship and "imposed on or incurred by the husband under the decree or under a written instrument incident to [a] divorce" are includable in the wife's gross taxable income. Sec. 71(a)(1), I.R.C. 1954.[1] Section 215(a)[2] provides that such payments thus includable in the wife's gross income may ordinarily be deducted by the husband.

However, "installment payments discharging a part of an obligation the principal sum of which is * * * specified in the decree, instrument, or agreement shall not be treated as periodic payments" *unless* "*by the terms of the decree, instrument, or agreement the principal sum * * * is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement*

---

[1] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[2] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

* * *." [3] (Emphasis supplied.) In the latter case the payments are to be considered as periodic payments includable in the wife's gross income and deductible from the husband's gross income rather than installment payments not includable in the wife's income and not deductible from the husband's gross income.

In these two cases, consolidated for trial and opinion, the respondent, in order to protect the revenue, has taken inconsistent positions. In the wife's case he has determined that the payments here involved were periodic payments taxable to the wife and deductible by the husband, and in the husband's case he has determined that the payments were installment payments not deductible by the husband since they were not includable as periodic payments in the wife's gross income. On brief he correctly likens his position to that of a stakeholder. The real litigants herein are the divorced husband and divorced wife; if one prevails, the other must lose.

In determining whether the obligation referred to in section 71(c) is payable over a period more than 10 years or less than 10 years, it is necessary to determine the date when the obligation comes into existence and the date when the last payment called for thereunder becomes payable. The date when the obligation in this case came into existence depends upon whether the obligation was incurred under a written instrument incident to the divorce, i.e., the agreement, or was imposed by the divorce decree.

In the instant case the written agreement or instrument was executed by the husband and wife on October 15, 1953, but the payments called for thereunder were to be made by the husband only "in the event a decree for a divorce a vinculo matrimonii is entered in favor of the wife." [4] Therefore, the first question to be resolved in determining the date when the obligation came into existence is whether the condition stated in the agreement was a condition relating to the existence of the contract or was a condition relating to the duty of performance thereunder.

---

[3] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

    (c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

        (1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

        (2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a) * * *

[4] The only evidence in the record relating to the date when the decree was "entered" is the copy of the decree itself dated Nov. 5, 1953, and the certificate of the clerk of the Circuit Court of Baltimore City, appended thereto to the effect that the copy introduced in evidence was "a true copy of the decree taken from the record of proceedings in said [divorce] cause." This certificate itself is dated Nov. 5, 1953. None of the parties argues that the date when the decree was entered was later than Nov. 5, 1953. On the record before us we have taken Nov. 5, 1953, as the date when the divorce decree was "entered."

The distinction between these two conditions (a distinction which we consider vital in cases such as the one before us) is described in 5 Williston, Contracts,[5] sec. 666 (3d ed. 1961), as follows:

Sec. 666. What It Is Which Conditions Qualify. * * * In the law of contracts, conditions may relate to the existence of contracts or to the duty of immediate performance under them.[1] It is a source of confusion of thought that the word "condition" is frequently used without exact recognition of what the supposed condition qualifies.

Generally in contracts, when reference is made to conditions, what is meant are conditions which become operative after formation of the contract and qualify the duty of immediate performance of a promise or promises thereunder—not conditions which qualify the existence of a contract or promise.[2] * * *

*     *     *     *     *     *     *

A condition may qualify the duty of immediate performance of one party or of both parties to the contract.[7] The fact that no duty of performance on either side can arise until the happening of a condition does not, however, make the validity of the contract depend upon its happening.[8] Whether there is a contract depends upon the right of the respective parties to enforce it in spite of an attempt by the other to revoke his promise. * * *

[Footnotes omitted.]

In our opinion the contingency or condition recited in the agreement was a condition relating to the duty of performing under the contract rather than a condition relating to the existence of the contract itself and, therefore, the obligation to make the payments here involved came into existence by reason of and at the time of the execution of the agreement even though the duty of performance (i.e., the payments called for by the agreement) was contingent upon the occurrence of a future event (i.e., the entering of a divorce decree). Thus it was an obligation incurred by the husband under a written instrument incident to the divorce.

We base this conclusion on two interrelated considerations. We have first considered the law of Maryland, the State in which the petitioners resided and which was the forum for their divorce proceeding. The statutes of Maryland authorize husbands and wives contemplating divorce to enter into agreements regarding property rights. Article 16, Md. Ann. Code sec. 28, added by "Chapter 220 of the Acts of 1931 of the General Assembly of Maryland" (referred to specifically by the agreement), provides as follows:

Sec. 28. Effect of agreement and settlements between parties.

Any deed or agreement made between husband and wife respecting support, maintenance, property rights, or any settlement made in lieu of support, mainte-nance, property rights or personal rights shall be valid, binding and enforceable to every intent and purpose, and such deed or agreement shall not be a bar to an action for divorce, either a vinculo matrimonii or a mensa et thoro, as the case may be, whether the cause for divorce existed at the time or arose prior or subsequent to the time of the execution of said deed or agreement, or whether

---

[5] One of the few treatises of an authentic American jurisconsult which in our opinion can be properly cited as authority.

at the time of making such deed or agreement the parties were living together or apart; provided, that whenever any such deed or agreement shall make provision for or in any manner affect the care, custody, education or maintenance of any infant child or children of the parties the court shall have the right to modify such deed or agreement in respect to such infants as to the court may seem proper, looking always to the best interests of such infants. (An. Code, 1951, § 37; 1939, § 42; 1924, § 39A; 1931, ch. 220.)

Such agreements regarding property rights are binding on the parties thereto as executed and cannot be modified or set aside by the court granting the divorce except on those grounds, such as collusion, mistake, or fraud, which would cause any contract to be modified or set aside by a court of equity.[6] *Grossman* v. *Grossman*, 234 Md. 139, 198 Atl. 2d. 260.

The parties to the agreement before us, after acknowledging the law of Maryland as enacted by chapter 220, of the Acts of 1931 of the General Assembly of Maryland, referred to above, as authorizing the agreement, and after reciting the contemporaneous passing of consideration, including the promises of the parties therein contained, used words in their present tense to state the fact that an agreement is made. For example, after stating that "it *is* the desire * * * of the parties * * * to enter into an agreement" it is provided that "*now* * * * the parties mutually *covenant and agree*" to do certain things, that "the wife *does hereby agree*" to do certain things, that "each of the parties * * * *agrees*" to certain things, and that "each party * * * *waives*" certain rights. Thus, the terms used by the parties in the agreement indicate that they intended to enter into a contract which would effectively impose mutual obligations upon its execution even though the duties and obligations assumed were to be performed in the future and as to one obligation (the duty of the husband to make payments to the wife) was conditioned as to performance upon the occurrence of a future event. And, as we have pointed out, under the law of Maryland the parties were authorized to make such an agreement with regard to property rights which could be set aside or modified by the Maryland courts only upon a showing of grounds for equitable relief such as collusion, mistake, or fraud, none of which is even suggested by the parties as existing in this case.

Limiting our decision to the particular agreement before us and to the particular jurisdiction of Maryland, we conclude that the obligations set out in the agreement (including the contingent obligation to make payments thereunder) arose from and at the time of the

---

[6] This statement does not apply to alimony payments. However, the payments here involved did not constitute alimony since the obligation to make them survived the husband's death, see *Woodham* v. *Woodham*, 235 Md. 356, 201 Atl. 2d. 674; *Schroeder* v. *Schroeder*, 234 Md. 462, 200 Atl. 2d. 42, and none of the parties contends to the contrary.

execution of the agreement on October 15, 1953, and were incurred thereunder.

The parties have referred us to three cases involving the question of whether the date of the agreement between husband and wife antecedent to a divorce or the subsequent divorce decree adopting that agreement should be deemed to be the date when the obligation to make payments was "imposed * * * or incurred" as the starting point in computing the 10-year period referred to in section 71(c)(2). See *Blum* v. *Commissioner*, 177 F. 2d 670, reversing a Memorandum Opinion of this Court; *Commissioner* v. *Blum*, 187 F. 2d 177, reversing 10 T.C. 1131; *Commissioner* v. *Newman*, 248 F. 2d 473, affirming 26 T.C. 717. This question was also involved in the case of *Spicknall's Estate* v. *Commissioner*, 285 F. 2d 561, reversing a Memorandum Opinion of this Court. In the instant case, as we have found, both the intent of the parties as evidenced by the language used by them in their agreement and the applicable State law regarding the validity of such an agreement require a conclusion that the obligation of Gordon arose under the agreement and the entering of a divorce decree merely conditioned performance under the agreement rather than the existence thereof. Because the language chosen by the parties in the agreements involved in the above-cited cases differed from the agreement in the instant case, and because none of those cases involved an application of the law of the State of Maryland we do not feel that any of them is controlling in this proceeding. In the *Blum* cases, both of which involved the same written agreement, the agreement "was expressly declared by both parties to be effective only in the event that * * * [the court] shall enter a decree of divorce severing the bonds of matrimony existing between them." *Tillie Blum*, 10 T.C. 1131, 1132. We thought that the parties to that agreement had evidenced by the quoted language a clear intent that the very existence of their contract depended upon the entry of a divorce decree between the parties. We therefore decided that the 10-year period began to run from the date the divorce decree was entered. The Seventh Circuit disagreed and held that the obligation arose as of the date of the agreement. See *Commissioner* v. *Blum, supra*, and the dictum of the Court of Appeals in *Blum* v. *Commissioner, supra*.

In the *Newman* case, the decree of divorce made material alterations in the agreement of the parties as originally entered into by them, something which the divorce court in this case did not do and which, under the law of Maryland, it could not do. Under those circumstances we held in the *Newman* case that the obligation arose out of the decree of divorce, 26 T.C. 717, and the Eighth Circuit affirmed our decision, 248 F. 2d 473.

In the *Spicknall* case, involving an agreement different from that in the instant case, we decided that the agreement indicated the parties intended that the obligation arise under the decree of divorce rather than the prior agreement, which we found to be "wholly ineffective without the decree." *Estate of Fred. L. Spicknall*, T.C. Memo. 1959-213 (p. 8). This being the case, we felt it irrelevant whether the divorce court was or was not free to alter the terms of the prior agreement under the law of Missouri. The Eighth Circuit reversed this Court and held that the obligation arose out of the agreement rather than the divorce decree.

Because of the particular facts of this case and the law of the particular jurisdiction involved we do not consider our decision to be either compelled by, or inconsistent with the holding in any of the cases herein discussed. While we are not in disagreement with the decisions of this Court in the cited cases as limited to the facts and local law appearing therein we are disinclined to agree with any language which may have been used in the opinions in those cases indicating a view that, as a matter of law and without regard to the terms of the particular agreement or the law of the State granting the divorce the obligation to make payments in connection with the settlement of property rights arises in all cases out of the divorce decree and is "imposed" thereby merely because a duty of performance with regard to making the payments called for by the agreement is conditioned upon the entry of the divorce decree.

We think that the approach which we have taken in the instant case finds support in the reasoning of both the majority and the dissenting opinions in the case of *Harris* v. *Commissioner*, 340 U.S. 106. While the *Harris* case involved a question arising under the gift tax provisions of the Internal Revenue Code, it was concerned with the problem of whether certain payments made by one divorced spouse to the other were "founded" on a property settlement agreement made by the parties prior to a divorce or were "founded" on the divorce decree later entered. The agreement in that case, like the agreement in the *Blum* cases, indicated the intent of the parties that the agreement should "not become operative in any manner nor * * * the covenants * * * [therein] become binding on either party unless a decree of absolute divorce * * * should be entered in the pending Nevada action." *Harris* v. *Commissioner, supra* at 110. Nevada law, unlike the law of Maryland "not only authorized but instructed the divorce court to decree a just and equitable disposition of * * * the * * * property of the parties." *Harris* v. *Commissioner, supra* at 109. Mr. Justice Douglas, writing the majority opinion on behalf of himself and four other justices, held the view that the payments were "founded" on the divorce decree, pointing

out that where the divorce court was free to alter the agreement of the parties, "The happenstance that the divorce court might approve the entire settlement, or modify it in unsubstantial details, or work out material changes seems to us unimportant." *Harris* v. *Commissioner, supra* at 110. Mr. Justice Frankfurter, writing a dissenting opinion on behalf of himself and three other justices, held the view that the payments were "founded" on the agreement of the parties, because the agreement recited that it should survive the divorce decree. Although the *Harris* case arose under a different chapter of the Internal Revenue Code, involved an agreement materially different from that in the instant case, and required consideration of State law (Nevada) differing from that relevant herein (Maryland), both the majority opinion and the dissenting opinion looked to the wording of the agreement and to the provisions of the law of the State granting divorce in a consideration of the question whether the payments involved were "founded" on the agreement or on the divorce decree. Cf. *Estate of Morrison T. O'Nan*, 47 T.C. 648.[7]

We now turn to a consideration of the question of when the last payment called for by the agreement was due and payable. In this connection we point out that the 10-year period referred to in section 71 is computed not from the date when the first payment "is to be paid or may be paid" to the date when the last payment "is to be paid or may be paid" but "from the date of [the] decree, instrument, or agreement" under which the obligation to make the payments "is imposed on or incurred by the husband" to the date when the last payment "is to be paid or may be paid."

The divorced wife contends that the first payment was due and payable on November 5, 1953, that the last payment was consequently due and payable on October 5, 1963, which would fall within a 10-year period beginning either October 15, 1953 (the date of the execution of the agreement), or November 5, 1953 (the date of the divorce decree), and that, therefore, the payments were installment payments rather than periodic payments. She argues that the adverb "immediately" as used in the first clause of paragraph 1.(a) of the agreement which provides that husband will pay to the wife a lump sum of $5,000 immediately after a decree of divorce is entered should also be considered as applying to the husband's undertaking set out in the second clause of that paragraph (separated from the first by a semicolon) that he would "pay the wife the sum of One Hundred Twenty-five Dollars

---

[7] Neither the majority opinion nor the dissenting opinion in the *Harris* case referred to any of the four cases which we have discussed and analyzed, *supra*. The same observation may be made with regard to our opinion in the recent case of *Estate of Morrison T. O'Nan, infra*.

($125) per month during her lifetime until the aggregate of said monthly payment [sic] * * * shall equal the sum of Fifteen Thousand Dollars ($15,000)." She further argues that this construction would make the agreement truly reflect the intention of the parties thereto at the time it was executed. We are unable to accept the testimony of the wife that the parties intended by the agreement that the first of the $125 payments was to be made immediately after the decree was entered and at the same time the lump-sum payment of $5,000 was called for,[8] and reject her argument that the first $125 payment was due and payable on November 5, 1953. Such a construction, which would entail a material revision in the literal and grammatical reading of the agreement, would be inconsistent with the contemporaneous actions of the parties thereto and contrary to customary commercial practice in transactions involving a downpayment to be followed by periodic installment payments. If the parties had intended that payments totaling $5,125 were to be made to the wife immediately after the entering of the decree the natural provision to have been made in the agreement would have been for the payment of a lump sum of $5,125 instead of two payments of $5,000 and $125 each. We are persuaded that the wife's present recollection of the transaction is distorted by the exigencies of this tax litigation.

The construction of the agreement most favorable to the position of the divorced wife which we are able to make is that it called for the payment of the lump sum of $5,000 immediately after the divorce decree was entered and for the payment of $125 during the month immediately thereafter to be followed by similar monthly payments during succeeding months until such monthly payments totaled $15,000. Thus the first monthly payment would be due and payable on December 4, 1953, and the last payment would be due and payable on November 4, 1963. *United States* v. *Reis*, 214 F. 2d 327. Cf. *Furrow* v. *Commissioner*, 292 F. 2d 604, affirming 34 T.C. 931. See, also, *Brun* v. *Northern Life Ins. Co.*, 16 Wash. 2d 504, 134 P. 2d 84.

Since November 4, 1963, is more than 10 years after October 15, 1953, we conclude that the monthly payments called for by the agreement were periodic payments rather than installment payments. Accordingly,

> *Decision will be entered for the petitioner in docket No. 4230-65.*
>
> *Decision will be entered for the respondent in docket No. 1739-66.*

---

[8] The testimony of the wife's attorney which was intended to corroborate her own testimony was inconclusive and to some extent inconsistent and was based on his memory of the transaction which as he acknowledged was extremely hazy.