William M. JOSLIN, Sr., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 17908.

United States Court of Appeals, Seventh Circuit.

April 17, 1970.

Frank J. Smith, Chicago, Ill., for petitioner-appellant.

Johnnie M. Walters, Asst. Atty. Gen., Gary R. Allen, Atty., Tax Division, U. S. Department of Justice, Washington, D. C., Lee A. Jackson, C. Guy Tadlock, Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, CUMMINGS, Circuit Judge, and DILLIN, District Judge.[1]

HASTINGS, Senior Circuit Judge.

Taxpayer William M. Joslin, Sr., appeals from a decision of the Tax Court of the United States sustaining a determination by the Commissioner of Internal Revenue of a deficiency in his federal income tax for the calendar year 1963 in the amount of $1,666.11. We affirm.

The issue presented is whether certain installment payments made by taxpayer to his former wife qualify as "periodic payments" under Section 71 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 71, and thus qualify for deduction by taxpayer under Section 215 of the Code, 26 U.S.C.A. § 215. The answer turns on whether taxpayer's liability to make these installment payments extended over a period of more than ten years as required by Section 71(c) (2), 26 U.S. C.A. § 71(c) (2).

The facts were stipulated. Taxpayer married Dorothy McCooey on January 28, 1956. On January 21, 1960, taxpayer and his wife entered into an agreement in anticipation of the wife's bringing an action for divorce in Nevada. The agreement provided for the settlement of the rights of the parties in certain property and of their liabilities for certain debts. These provisions were carried out, in whole or in part, before the decree of divorce was entered.

In addition to these provisions dealing with the division of property, the agreement provided:

"1. Husband agrees: * * *

(c) To pay to Wife * * * Twenty-Seven Thousand and No/100ths Dollars ($27,000.00) in monthly payments of Two Hundred Twenty-Five and No/100ths Dollars ($225.00) per month beginning on the first day of the month succeeding the month in which a Decree of Divorce in favor of the Wife may be entered and subsequent payments to be due on the first day of each and every month thereafter until said sum of Twenty-Seven Thousand and No/100ths Dollars ($27,000.00) shall be fully paid. In the event that Hus-

band fails to pay any of said monthly installments Wife may at her option declare the unpaid balance immediately due and payable. In case of Husband's death prior to the death of Wife, any unpaid balance of said payments shall be and continue to remain an obligation of Husband's estate.

\* \* \* \* \* \*

"2. Wife agrees: \* \* \*

(d) To accept payments required herein as a lump sum property settlement and alimony in gross, as full settlement of all her rights in and to the property of Husband, both real and personal, and in satisfaction of all claims and demands of every character arising out of the marital status of the parties hereto, including costs, temporary alimony, permanent alimony, support and maintenance, right of family allowance, right to inherit, and all claims of every other character and description held by Wife against Husband, save as herein provided.

\* \* \* \* \* \*

"3. Both parties agree: \* \* \*

(d) That this Agreement subject to the approval of the court, or such parts thereof as the courts shall deem pertinent, shall be made a part of any Decree of Divorce to be entered between the parties hereto, in lieu of any and all other provisions for either division of property or alimony."

On March 15, 1960, the parties were divorced by a decree entered in Nevada and reading, in pertinent part, as follows:

"FINDINGS OF FACT

\* \* \* \* \* \*

3. All matters concerning the property rights of the parties have been settled by an agreement in writing dated January 21, 1960.

"CONCLUSIONS OF LAW

\* \* \* \* \* \*

2. That the agreement dated January 21, 1960 be approved.

\* \* \* \* \* \*

"Now, Therefore, by virtue of the law and the facts, it is hereby Ordered, Adjudged And Decreed as follows:

\* \* \* \* \* \*

2. That the agreement dated January 21, 1960, settling the property rights of the parties be, and the same hereby is, approved by the Court, and the parties are ordered and directed to comply with the terms thereof."

In 1963, taxpayer made payments totaling $2,700.00 to his former wife. He deducted these payments on his federal income tax return for 1963, designating them as "12 monthly payments of $225.00 under divorce settlement contract." The Commissioner disallowed such deduction and assessed the deficiency in suit on the ground that the payments "are not periodic payments under section 71(c) and therefore [taxpayer is] not entitled to any deduction for such payments under section 215." The Tax Court sustained the Commissioner's determination.

Section 215(a), *supra*, permits a husband to deduct "amounts includible under section 71 in the gross income of his [divorced] wife \* \* \*." Section 71(a)(1) provides, as a general rule, that:

" \* \* \* the [divorced] wife's gross income includes periodic payments \* \* \* received after such [divorce] decree in discharge of \* \* \* a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce \* \* \*."

However, Section 71(c)(1) further provides that "installment payments discharging \* \* \* a principal sum \* \* \* specified in the decree, instrument, or agreement shall not be treated as periodic payments" includible in the wife's gross income, unless as provided by Section 71(c)(2) the payments are

"to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement * * *."

It is stipulated that the last payment due from taxpayer to his former wife in the instant case was to be made on March 1, 1970. The pre-divorce agreement was executed January 21, 1960, more than the required 10 years before March 1, 1970. The divorce decree was entered on March 15, 1960, less than the required 10 years before March 1, 1970. Thus the question is whether the payment period runs from the date of the agreement or from the date of the decree.

■ In determining the critical date from which the payment period will be computed for purposes of Section 71(c)(2), courts have looked to whether the legal obligation to make the payments was incurred under the agreement incident to the divorce or was imposed by the decree of divorce. Estate of Spicknall v. Commissioner of Internal Revenue, 8 Cir., 285 F.2d 561, 564 (1961); Commissioner of Internal Revenue v. Newman, 8 Cir., 248 F.2d 473, 475 (1957); Commissioner of Internal Revenue v. Blum, 7 Cir., 187 F.2d 177, 180 (1951); Blum v. Commissioner of Internal Revenue, 7 Cir., 177 F.2d 670, 673 (1949); and Munderloh v. Commissioner, 48 T.C. 452,

458 (1967). This question is treated as one of fact depending on the intent of the parties to the agreement and the law of the state under which the decree is entered. *Munderloh, supra,* 48 T.C. at 459–463. Taxpayer does not challenge these general principles of law.

In the instant case, the Tax Court interpreted the agreement to show no intent by the parties to bind themselves concerning support payments until such time as the agreement was approved by the court decreeing the divorce. Taxpayer contends this was error. We may assume *arguendo* that taxpayer is correct concerning the intent of the parties. Even on this assumption, taxpayer will not prevail in light of the law of Nevada, the state in which the divorce decree was entered.

■ Under the law of Nevada, parties to a divorce are powerless to bind themselves to any agreement concerning post-divorce support payments. Nevada statutes expressly provide that a husband and wife may contract as to property rights and pre-divorce support payments.[2] However, the Nevada statutes are silent as to any such right of the parties to bind the divorce court by mutual agreement concerning post-divorce support payments. In fact, Nevada courts are expressly empowered by statute [3] to award alimony and support payments.[4]

2. "NEVADA REVISED STATUTES: *Title* 11—DOMESTIC RELATIONS; *Chapter 123—Rights of Husband and Wife;* Par. 123.080 Contract altering legal relations: Separation agreement; consideration; introduction in evidence in divorce action.

1. A husband and wife cannot by any contract with each other alter their legal relations except as to property, and except that they may agree to an immediate separation and may make provision for the support of either of them and of their children during such separation. * * *"

3. "NEVADA REVISED STATUTES: *Title* 11—DOMESTIC RELATIONS; *Chapter 125—Divorce, Separate Maintenance and Annulment.* Par. 125.150— Alimony and adjudication of property rights; award of attorney's fee; sub-

sequent modification by court on stipulation of parties.

1. In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable * *.

* * * * *

3. The court may also set apart such portion of the husband's property for the wife's support and the support of their children as shall be deemed just and equitable. * * *"

4. In his briefs on this appeal, taxpayer makes much of the fact that the Tax Court apparently concluded that the installment payments under consideration were "alimony." He contends that they were not "alimony" but were "support payments based on the marital relationship." From this he argues that the "ali-

■ This *power* of the Nevada divorce court to fix support payments is absolute and unaffected by any attempted agreements of the parties intended to fix the support obligation. In Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131, 136 (1931), the Nevada Supreme Court said: "[T]he trial court in no instance is bound by the written agreement of the parties to a divorce action. * * * It * * * may, in its discretion, cast aside and refuse to adopt any such agreement which the parties might have, with the utmost good faith, entered into. * * * [T]he court is not controlled or obligated by the stipulation of the parties * * *. In Day v. Day, 80 Nev. 386, 395 P.2d 321, 322 (1964), the Nevada court said: "[T]he adoption of an agreement by the trial court effectuates a merger of the agreement into the decree entered. A merger destroys the independent existence of the agreement and the rights of the parties thereafter rest solely upon the decree." This, the court held, was the case even in the face of a specific provision of the adopted agreement that it should survive as the source of the parties' obligations. Only if the divorce court specifically directs survival of the agreement would the result be different, according to the Nevada court.

■ Thus, we conclude that in the instant case, where the Nevada divorce court merely "approved" the agreement, the obligation of the taxpayer to make the installment payments here in question is founded solely on the divorce decree. *See* Harris v. Commissioner of Internal Revenue, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950). No matter what the expressed intent of the parties, the law of Nevada is clear that they may not bind themselves concerning support payments without the *explicit* direction of the divorce court that their agree-

ment survives. There was no such direction here.

■ Since the date of the decree, March 15, 1960, is less than the required ten years prior to the stipulated date of the last payment by taxpayer to his former wife, the payments cannot be considered "periodic payments" includible in the gross income of the divorced wife under Section 71(a) (1). Accordingly, the Commissioner and the Tax Court properly determined that the taxpayer husband was not entitled to deduct the payments under Section 215.

■ Taxpayer raises one further contention. He asserts that if his obligation to make the installment payments in question was imposed by the divorce decree, then such payments are, under Nevada law, subject to the contingencies of death and remarriage, Nev.Rev.Stats., Title 11, Par. 125.150(4). Installment payments subject to such contingencies are, taxpayer asserts, deductible even though they do not extend over a period of more than ten years, Treasury Regs., § 1.71–1(d) (3), 26 C.F.R. § 1.71–1(d) (3). The Government contends that the Nevada statute is not applicable here for the reason that the Nevada divorce court excluded such contingencies by its decree, as it could do under the statute. This issue was not presented to the Tax Court by taxpayer. Under the familiar rule, we shall not pass upon the merits of an issue here which the Tax Court had no opportunity to consider. Kelly v. Commissioner of Internal Revenue, 7 Cir., 228 F.2d 512, 516 (1956); Platt v. Commissioner of Internal Revenue, 7 Cir., 207 F.2d 697, 700 (1953).

For the foregoing reasons, the decision of the Tax Court under review is affirmed.

Affirmed.

---

mony" which Nevada allows the divorce court absolute power to set is not what is involved in this agreement. This argument has little merit. First, the essence of "alimony" is that it is "support payments based on the marital relationship."

Second, whatever differences may be thought to exist between the two concepts, the Nevada statute quoted in the preceding footnote and relied upon by the Tax Court expressly refers to and encompasses both.

CUMMINGS, Circuit Judge (concurring).

It seems preferable to me to affirm on the ground that under the terms of the agreement between the taxpayer and his wife, the husband's obligation to make the monthly payments to his wife did not attach until the divorce decree was entered. This was the alternative basis of the Tax Court's opinion (52 T.C. 231, 239–240).

The purpose and function of Section 71(c) (2) of the Internal Revenue Code contemplate that the "date of such decree, instrument, or agreement" should be construed to mean the effective date of the obligation incurred (26 U.S.C. § 71(c) (2)). Therefore, unlike a presently enforceable separation agreement, an instrument which conditions the obligation of periodic payments upon the subsequent issuance of a divorce decree should take the date of the fulfillment of that condition even though a valid contract was otherwise entered substantially earlier.

In this case, the agreement itself clearly intended that the establishment of the decree and the incorporation of the agreement into the decree should be conditions precedent to the creation of any obligation to make the monthly payments. See 3A Corbin on Contracts, § 625 et seq. (1960). Thus paragraph 1(c) provides that the payments shall begin "on the first day of the month succeeding the month in which a Decree of Divorce in favor of the Wife may be entered," and paragraph 3(d) provides:

> "That this Agreement subject to the approval of the court, or such parts thereof as the courts shall deem pertinent, shall be made a part of any Decree of Divorce to be entered between the parties hereto, in lieu of any and all other provisions for either division of property or alimony."

Accordingly, the effective date of the decree should control here, so that the periodic payments are not deductible by taxpayer.

The majority has adopted the blanket rule that unless state law binds the divorce court to the terms of the parties' own agreement, then by definition the periodic payments are imposed by the decree. Such a rule fails to draw any distinction between separation agreements which happen to be incorporated into a divorce decree well after they have taken effect and governed the discharge of the marital obligation, and instruments which are not intended to impose any legal duties until sanctioned by the decree of the divorce court. This rule does not necessarily follow from prior decisions such, as the *Blum* cases,* and can be avoided here by referring to the content of the agreement itself.

---

* Blum v. Commissioner of Internal Revenue, 177 F.2d 670, 673 (7th Cir. 1949) ; Commissioner of Internal Revenue v. Blum, 187 F.2d 177 (7th Cir. 1951) (related case).