JOYCE SCHOTTENSTEIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ALAN J. SCHOTTENSTEIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10332–76, 4505–77.     Filed December 29, 1980.

*Danial C. George* and *Walter F. McQuade,* for the petitioner in docket No. 10332–76.

*James A. Scott* and *Kenneth J. Kies,* for the petitioner in docket No. 4505–77.

*Robert J. Kastl,* for the respondent.

DRENNEN, *Judge:* In these consolidated cases, the respondent has determined the following deficiencies in the 1973 income tax of petitioners:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 10332–76 | Joyce Schottenstein | $3,825.84 |
| 4505–77 | Alan J. Schottenstein | 63,537.00 |

After concessions, the only issue for decision is whether $12,000 paid to petitioner Joyce Schottenstein by petitioner Alan J. Schottenstein is includable in petitioner Joyce Schottenstein's

income pursuant to section 71, I.R.C. 1954, and is deductible by petitioner Alan J. Schottenstein pursuant to section 215.[1]

## FINDINGS OF FACT

Some of the facts were stipulated, and they are so found. The stipulations of fact, supplemental stipulations of fact, and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Joyce Schottenstein (hereinafter Joyce) resided at 2641 Berwick Boulevard, Columbus, Ohio, when she filed her petition in this case. Joyce filed an individual Federal income tax return with the Office of the Internal Revenue Service at Cincinnati, Ohio, for the year 1973.

Petitioner Alan J. Schottenstein (hereinafter Alan) resided at 1000 Urlin Ave., Columbus, Ohio, when he filed his petition herein. Alan filed an individual Federal income tax return with the Office of the Internal Revenue Service at Cincinnati, Ohio, for the year 1973.

Alan and Joyce were married on May 1, 1966, and were divorced on August 1, 1973. Two children were born of this marriage, one in December 1967 and one in June 1971.

At the time of her marriage to Alan, Joyce owned the following assets: (a) A 1965 Thunderbird automobile; (b) jewelry with an estimated value of $10,000; (c) a mink stole with an estimated value of $1,000; (d) clothing and other personal effects; (e) $3,700 in teacher's retirement benefits; and (f) furniture, household articles, and other items of personal property of slight value.

Alan and Joyce received approximately $2,100 in cash as wedding gifts. Joyce's 1965 Ford Thunderbird was sold for approximately $1,800 subsequent to the marriage. Approximately $900 was received as an insurance payment as a result of the theft loss of certain jewelry. All of these funds and the $3,700 received by Joyce in teacher's retirement benefits were consumed during the marriage.

Joyce was not gainfully employed at any time during the marriage. The only property or assets of significant value which

---

[1]Respondent has taken inconsistent positions with respect to his deficiency determinations against petitioner Joyce Schottenstein and petitioner Alan J. Schottenstein.

Joyce acquired during the marriage were as a result of gifts from Alan.

With the exception of the funds from the above-noted sources, Alan provided the funds expended during the marriage. Among the funds which Alan supplied were: (a) $15,000 toward the purchase of a $50,000 house (a loan of $35,000 was also obtained) on Berwick Boulevard, Columbus, Ohio, title to which was taken in the names of both Alan and Joyce; (b) $30,000 for the purchase of a one-half interest in an apartment complex known as the Tamara Apartments, title to which was taken by Alan and Joyce individually as owners of undivided one-fourth interests; and (c) undisclosed amounts for all or substantially all household furnishings. Household expenditures approximated $20,000 annually, which were also paid by Alan.

Alan had substantial assets at the time of the marriage. Stock in Columbus Cycle & Supply Co., a third generation family-owned corporation, was Alan's principal asset both at the time of and during the marriage.

Alan and Joyce separated in late 1971. Subsequently, negotiations aimed at reaching a final separation and financial settlement commenced.

In 1972, Alan, as plaintiff, instituted divorce proceedings against Joyce. A counterclaim was filed by Joyce requesting "temporary support and alimony, expense money, permanent alimony and a divorce." Following a trial, Alan's prayer for divorce was denied by the trial court, Joyce having earlier dismissed her counterclaim for divorce.

Shortly after Alan's prayer for a divorce was denied, negotiations aimed at reaching a final separation and financial settlement were renewed. After several months of negotiations, agreement was reached, and a "Separation Agreement" was executed by Alan and Joyce on April 19, 1973. Subsequent thereto, Joyce filed a complaint requesting a divorce from Alan.

The separation agreement first provided for a mutual release of all marital claims against each other. Paragraph 3 was headed "Division of Property and Support" and provided in pertinent part that: (a) As of December 31, 1972, the audited book value of Alan's stock in the Cycle Co., together with the fair market value of all his other assets, net of liabilities, was less than $4 million; (b) Alan would convey his one-fourth individual interest in the Tamara Apartments to Joyce; (c) Alan would provide

Joyce with a new automobile; (d) Joyce would retain her personal property owned at the time of the marriage, her clothes, and the majority of the household furnishings located in the Berwick Boulevard home; and (f) the Berwick Boulevard home would be sold and Joyce would receive the first $30,000 of the net proceeds (with Alan guaranteeing Joyce a minimum payment of $30,000) and one-half of any amount in excess of $30,000. Paragraph 3(e) also specifically provided:

(e)(1) By way of property settlement, the husband will pay the wife the sum of Three Hundred Thousand Dollars ($300,000.00) (subject to adjustment as hereinafter provided) in annual installments of Twelve Thousand Dollars ($12,000.00) without interest except that each annual installment commencing with the second annual installment shall be increased in proportion to the increase, if any, in the Consumer Price Index For Urban Wage Earners and Clerical Workers published by the The Bureau of Labor Statistics, United States Department of Labor from January 1 of each calendar year to January 1 of the succeeding calendar year during the periods that the payments provided in this subparagraph are due; but in no event shall any adjustment increase the amount of said payment more than Four Percent (4%) over the amount paid in the previous year. * * * If the husband should die before the payment of the twenty-five (25) Annual Installments provided for herein, then the amount due under the provisions of this paragraph shall be a liability of the husband's estate determined as follows: the number of Annual Installments due shall be multiplied by Twelve Thousand Dollars ($12,000.00). The amount so determined shall be a liability of the husband's estate and due six (6) months following the death of the husband. The husband's estate shall have no further liability for Annual Installments under the provisions of this paragraph except for those that were due prior to the death of the husband. * * *

(e)(2) * * * [Alan was required to provide security for his obligation under subpar. (e)(1)].

Paragraph 3(g) provided:

(g) The husband shall pay to the wife for her separate maintenance and support the sum of Five Thousand Dollars ($5,000.00) per year, payable in monthly installments of Four Hundred Sixteen Dollars and Sixty-Six Cents ($416.66) each, commencing thirty (30) days following execution of this Agreement, and continuing each month thereafter for a period of sixty (60) consecutive months unless the wife dies or remarries, in which event, the husband's obligation to pay or furnish such support shall absolutely cease and terminate upon the happening of the earlier of such event.

Paragraph 6 of the separation agreement provided that Alan would pay Joyce's legal fees. Paragraph 4 provided that Joyce would have custody of the children, and paragraph 7 provided that Alan would pay Joyce $500 per month per child for the

support of the children and would also provide them with health insurance and college tuition.

On August 1, 1973, a "Decree of Divorce" was granted with respect to a complaint for divorce filed by Joyce. The separation agreement was incorporated into and made a part of the divorce decree.

During 1973, Alan paid $12,000 to Joyce pursuant to subparagraph (e)(1) of the separation agreement. Alan deducted this amount as an itemized deduction on his return filed for 1973. Joyce did not include this amount in her income on her return filed for 1973.

In the respective statutory notices of deficiency, respondent disallowed Alan's deduction of the $12,000 amount and included it in Joyce's income.

## OPINION

Section 71(a)[2] includes in a wife's gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under a divorce decree or written instrument incident to the divorce. Section 215[3] generally allows a husband to deduct payments made to his wife which payments are includable in the gross income of the wife under section 71.

There is no dispute that Alan's payment of $12,000 to Joyce during 1973 pursuant to subparagraph (e)(1) of the separation agreement satisfied the section 71 requirements that the payment be periodic[4] and that the obligation to make the payment

---

[2]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE. —

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE. —If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[3]SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE. —In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

[4]Although sec. 71(c)(1) provides that, for purposes of sec. 71(a), installment payments

be imposed or incurred under a divorce decree or written instrument incident to the divorce. All the parties agree that these two requirements have been met. The single issue for our decision is whether the requirement that the payment be made "in discharge of legal obligation" imposed "because of the marital or family relationship" is satisfied.

The statutory requirement that payment be made in discharge of a legal obligation imposed "because of the marital or family relationship" in effect requires the payments to be in the nature of support (and will be hereinafter referred to as support or alimony) rather than in settlement of some property interest of the wife. See sec. 1.71–1(b)(4), Income Tax Regs.; *Warnack v. Commissioner*, 71 T.C. 541 (1979). If the payments required under subsection (e)(1) of the separation agreement effected a property division or satisfied Joyce's property rights, they would be neither includable in her gross income under section 71(a) nor deductible by Alan under section 215, since they would be capital in nature. *Thompson v. Commissioner*, 50 T.C. 522 (1968).

The character of the payment in issue is a factual question which must be resolved from the surrounding facts and circumstances. *Wright v. Commissioner*, 62 T.C. 377 (1974), affd. 543 F.2d 593 (7th Cir. 1976); *Ryker v. Commissioner*, 33 T.C. 924 (1960). An important factor to be considered is the intent of the parties. *Porter v. Commissioner*, 388 F.2d 670 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; *Wright v. Commissioner, supra*. Courts have also considered the form of the payment at issue and the respective property interests of the parties involved. See *Wright v. Commissioner, supra; Weiner v. Commissioner*, 61 T.C. 155 (1973); *Hesse v. Commissioner*, 60 T.C. 685 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975); *Ryker v. Commissioner, supra; Bardwell v. Commissioner*, 38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963). See also *Warnack v. Commissioner, supra*. These additional factors often provide objective evidence of the parties' intent.

---

discharging a part of an obligation the principal sum of which is specified in the agreement or decree shall not be treated as periodic payments, sec. 71(c)(2) provides that if, by the terms of the agreement or decree, the principal sum referred to in (c)(1) is to be paid over more than 10 years, then (notwithstanding (1) above), the installment payments *shall be treated* as periodic payments for purposes of subsec. (a). The installment payments on the $300,000 lump-sum figure here involved were to continue for more than 10 years.

As could be expected, Alan's and Joyce's testimony as to what they intended and what they understood the $300,000 amount to represent was contradictory and of little value. The testimony of their respective negotiating attorneys was also contradictory. The only fact which this evidence clearly established was that the negotiations prior to execution of the separation agreement were protracted, acrimonious, and at arm's length.

However, the more objective indicia of the nature of the payments, in our opinion, support a conclusion that the payments in issue were intended and agreed to be treated as a property settlement rather than support or alimony.

The separation agreement on its face states that "By way of property settlement," Alan agreed to pay Joyce the sum of $300,000 in 25 installments of $12,000 each. Although we are not bound by the label given to the payments (*Joslin v. Commissioner*, 52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970)), the label may have some probative value in a case such as this where the $300,000 was the subject of negotiations and each party was represented by counsel, and where separate provision was made for the payment of an amount for support and maintenance. In addition, the payments were not subject to termination upon the death or remarriage of Joyce, nor on the death of Alan, and Alan was required to provide security for his obligation, which would be somewhat more indicative of a lump-sum property settlement payable over a period of time than of alimony. Support payments usually stop when the wife dies. Finally, provision was made in a separate paragraph for payments to Joyce of $5,000 per year for 5 years for her separate maintenance and support. "When the parties themselves differentiate among payments to be made under a divorce settlement by placing them in different portions of the agreement and making them subject to different terms, it is proper for a court to also accord them different tax treatment." *Martin v. Commissioner*, 73 T.C. 255, 264 (1979).[5]

Both parties had different attorneys during the course of the negotiations. Mr. Schwartz represented Alan in the final negotiations and appears to have drafted the separation agreement. Mr. Bradley represented Joyce in the final negotiations. While Alan and Joyce apparently agreed between themselves on many

---

[5]There is no question that the payments made as maintenance and support under par. 3(g) of the separation agreement qualify as alimony under sec. 71(a).

of the settlement provisions, their attorneys negotiated the terms both orally and by correspondence. By letter dated November 22, 1972, Schwartz advised Bradley that "the agreement between the parties was that the *property settlement* would be $300,000 and not $400,000," and that no cost of living adjustment was included in the agreement. Again, by letter dated December 11, 1972, Schwartz advised Bradley that "Alan is prepared to adjust the $300,000 *property settlement* by cost of living increases. This is in lieu of the alimony provision contained in Paragraph Sixteen (16), which must be consequently deleted."[6]

Joyce's brother, Harvey, an attorney from Miami, Fla., participated in the last few days of the negotiations in Columbus, Ohio. Some time after he returned to Flordia, Alan wrote to Harvey in longhand concerning the financial burden placed on him by the settlement agreement. After stating his income for 1972, Alan appears to set out the amounts he would be obligated for under the settlement as follows:

| | |
|---|---|
| $20,000 | yearly property |
| 12,000 | child support |
| 2,000 | + medical, dental, Blue Cross—open end |
| 5,000 | alimony (for 5 years) |
| 3,000? | camps—open end |

—or—

at after-tax rate of 40%

| | |
|---|---|
| $12,000 | property (60% of $20,000) |
| 12,000 | child support |
| 5,000 | + open end |
| --- | not including alimony |
| 29,000 | |

Alan attempted to explain the relationship of the $20,000 property figure used in the top table to the $12,000 property figure used in the "after-tax" second table by saying that the $20,000 figure represented what he thought the average annual installment would be over the 25 years after adding 4 percent

---

[6]We have no evidence as to what the par. 16 referred to provided.

per year for the cost of living adjustment. We think this explanation was fabricated out of whole cloth and that the more likely interpretation of these figures is that Alan thought it would cost him $12,000, net after taxes, whether he paid Joyce $20,000 a year as deductible alimony or $12,000 a year as nondeductible property settlement. Since the $12,000 figure was used in the separation agreement "By way of property settlement," we believe Alan thought the payments were nondeductible installment payments on a lump-sum property settlement.

On the other side of the coin and supporting Alan's claim that the payments were for support, is the fact that no interest was to be paid on the deferred $300,000 payment. It might be expected that interest on the deferred amount would be required if it was intended as a property settlement.[7] Also, the $5,000 alimony for 5 years provided in paragraph 3(g) was rather meager (although if Joyce pays taxes on the $12,000 payments, her after-tax income from this source will also be rather meager). It is also quite apparent that at the time of the divorce Joyce had very little tangible property or property rights to exchange for an interest in Alan's estate. She received, under other provisions of the agreement, properties at least equal in value to the property she took into the marriage and that she had an interst in at the time of the divorce. We will discuss this later in the opinion.

Alan also claims that all Joyce was interested in during the negotiations was support and security, that there was no discussion of a division of property other than that which was made in other provisions of the agreement, that Joyce did not know how much he was worth, and that the parties agreed that Alan's net worth was not a factor in the negotiations. This has a rather hollow ring, however, in light of Joyce's attorney's testimony that Alan would not divulge his net worth, and since there was no litigation then pending, he could not be forced to disclose it. We note from Alan's 1973 income tax return that on August 8, 1973, 1 week after the divorce decree was entered, Alan sold his interest in the Cycle business for about $12 million,

---

[7] It might be that the cost of living adjustment was intended to be a substitute for interest, but a cost of living adjustment suggests that the payments were for support more than a substitute for interest.

compared to the "less than $4,000,000" figures used in the separation agreement.

Alan also explained that the $300,000 was characterized as "By way of property settlement" in the agreement to exclude jurisdiction of the divorce court to modify the provision, which it could do if it was support or alimony but which it had no jurisdiction to do if it was a division of property agreed to by the parties. Alan claims that Joyce insisted on this characterization for her security, but we think it is much more likely that Alan was the insistent party, particularly in light of his almost immediate sale of his business for such a large sum. We believe Alan wanted to have his cake, by precluding the divorce court from modifying the agreement, and now to eat it too, by convincing this Court that the label used was meaningless and the payments were in fact support and deductible by him. See *Wolfe v. Wolfe*, 46 Ohio St. 2d 399, 350 N.E.2d 413 (1976), for a discussion of the jurisdiction of an Ohio divorce court to modify the terms of a divorce decree previously issued by it relative to awards of alimony and/or property rights.

Based on all the evidence and circumstances, we are convinced that the parties intended the $300,000 to be treated as a property settlement, the payments on which were not to be taxable to Joyce and not to be deductible by Alan. Were this all that was required, we would hold for Joyce, but unfortunately such is not the situation.

As previously mentioned, the legal obligation referred to in section 71(a) is the general obligation to support, frequently characterized as "alimony." The payments must be for support, or section 71(a) does not apply. Even though installment payments on a principal sum over a period of more than 10 years are to be treated as periodic payments under section 71(c)(2), "This does not eliminate the requirement that the payments be in the nature of support rather than a division of property." *Lambros v. Commissioner*, 459 F.2d 69 (6th Cir. 1972), affg. a Memorandum Opinion of the Court. "Whether the payments *in fact* represent alimony * * * turns upon the facts, and not upon the labels * * * placed upon them." *Hesse v. Commissioner*, *supra* at 691.

While section 71 does not mention "division of property" or "property settlement," the above cited and other cases have approached the issue on the basis of whether the payments are

for support or represent a division of property, which is considered to be capital in nature, and not subject to section 71 even though periodic and incident to divorce. See *Lambros v. Commissioner, supra,* wherein the Sixth Circuit reviewed the legislative history of sections 71 and 215 of the 1954 Code, and *Warnack v. Commissioner, supra,* wherein it is said, at page 550:

A review of the cases in the "support" area reveals that the courts have not focused merely on whether the payments are for "support"—rather the approach has been to determine whether the payments are for support in contradistinction to being in exchange for the wife's release of some property interest.

Where this Court has found that either there had been a substantially equal distribution of the community property or that the wife had by other provisions received property equal in value to the interests she had in either her separate or marital property at the time of the divorce, so that the wife had no further tangible property rights that she could exchange for an interest in the husband's separate property, it has concluded that periodic payments in addition to the above were for support or alimony. In other words, if there was any ambiguity in the decree or agreement with respect to periodic payments, to support a conclusion that the payments are a division of property or a property settlement, the Court has required that the wife have tangible property rights that she gives up in exchange for a share of the husband's estate. See, e.g., *Wright v. Commissioner, supra; Hesse v. Commissioner, supra; Thompson v. Commissioner, supra; Ryker v. Commissioner, supra.* A wife's inchoate rights in her husband's property under common law has not been recognized as reaching the dignity of such an interest as to support a division of property among coowners. *Wright v. Commissioner, supra* at 391;[8] see also *United States v. Davis,* 370 U.S. 65 (1962). On the other hand, foregoing specific rights given to a wife in her husband's property by State law has been held

---

[8]But see the opinion of Seventh Circuit in *Wright v. Commissioner,* 543 F.2d 593, 598 (7th Cir. 1976), affg. 62 T.C. 377 (1974), wherein it is said:

"To the extent that the (Tax) court held that a surrender of inchoate rights cannot support a division of property, we disagree. Where the record clearly shows that the parties so intended the payments for this purpose, surrender of a wife's inchoate rights in exchange for a lump sum payment, to be made in installments over a number of years, might well preclude a finding that the payments were made in pursuance of the husband's obligation of support. The intention of the parties is the principal determinant. * * * "

sufficient to support a division of property. *Mills v. Commissioner*, 54 T.C. 608 (1970), affd. 442 F.2d 1149 (10th Cir. 1971); *Jackson v. Commissioner*, 54 T.C. 125 (1970); *Gammill v. Commissioner*, 73 T.C. 921 (1980), on appeal (10th Cir., Jan. 3, 1980).

Applying the standards set by this Court in the above cases,[9] we do not find that Joyce had any tangible property rights, not otherwise accounted for, that she could exchange for the $300,000 Alan agreed to pay her. In other provisions of the separation agreement, she received property having a value at least equal to the property she took into and acquired during the marriage. There is no claim by Joyce that she had a tangible property interest, either separate or joint, for which she was not recompensed.

Property interests are determined under State law. *Estate of Gamble v. Commissioner*, 69 T.C. 942 (1978). *Imel v. United States*, 523 F.2d 853 (10th Cir. 1975), affg. 375 F. Supp. 1102 (D. Colo. 1974). Ohio is not a community property jurisdiction. By Ohio statute, it is provided:

> Neither husband nor wife has any interest in the property of the other, except as mentioned in section 3103.03 of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either. * * * [Ohio Rev. Code Ann. sec. 3103.04 (Page).] [10]

Under this statute, Joyce would have acquired no interest in Alan's separate property during their marriage, and her right to dower was too speculative to support a division of property. *Hesse v. Commissioner, supra.* Furthermore, there is no evidence that dower was considered in the negotiations. Unlike such cases

---

[9] I have not found mentioned, as consideration for a division of property, intangible rights that a wife may have given up in exchange for a part of her husband's property, such as, e.g., the right to remain married. In this case, Alan tried but was unable to obtain a divorce, which certainly gave Joyce a bargaining point, at least. But see *Hesse v. Commissioner*, 60 T.C. 685, 693 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975). Were I writing on a clean slate, I would give more consideration to the intangible rights a wife gives up in agreeing to a divorce, particularly, where the parties have negotiated a settlement agreement at arm's length and have deliberately labeled a payment as a division of property or a property settlement. See *Munderloh v. Commissioner*, 48 T.C. 452 (1967); *Shane v. Commissioner*, T.C. Memo. 1980–409.

[10] The exception to the general rule of separate property interests set forth in Ohio Rev. Code 3103.03 generally provides that a husband has a duty to support his wife and children "out of his property." Any transfer of property to Joyce in satisfaction of this obligation would be in the nature of support.

as *Lambros v. Commissioner, supra,* and *Broida v. United States,* an unreported case (N.D. Ohio 1977, 40 AFTR 2d 77–5676, 77–2 USTC par. 9598), where the wife had helped build up the material estate during coverture, Joyce had done nothing to enhance the estate during the marriage and thus had no equitable or legal rights in the marital estate other than what she received under other terms of the agreement.

Respondent contends[11] that "Ohio recognizes the right of a wife to share in the property acquired or appreciated during marriage" (based on the presumption of joint efforts) and that Joyce would have "equitable" property interests in excess of her share of jointly owned property and her separately owned property.

Respondent bases his contention on Ohio Rev. Code Ann. sec. 3105.18 (Page),[12] which provides that in awarding reasonable "alimony," the State court may consider factors which "have little relevance to a possible *need* for sustenance * * * [but] are quite pertinent to considerations of the distributions of marital assets and liabilities—the property settlement." *Wolfe v. Wolfe,* 350 N.E.2d at 423. The State court's ability to consider such factors is, respondent argues, a recognition of a wife's equitable property interest in the husband's property.[13]

---

[11]On brief, respondent, without waiving his inconsistent positions and admitting the closeness of the question, argued in favor of Joyce and against Alan.

[12]Sec. 3105.18 provides in pertinent part as follows:

(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:
(1) The relative earning abilities of the parties;
(2) The ages, and the physical and emotional conditions of the parties;
(3) The retirement benefits of the parties;
(4) The expectancies and inheritances of the parties;
(5) The duration of the marriage;
(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
(7) The standard of living of the parties established during the marriage;
(8) The relative extent of education of the parties;
(9) The relative assets and liabilities of the parties;
(10) The property brought to the marriage by either party;
(11) The contribution of a spouse as homemaker.

[13]In *Lambros v. Commissioner,* T.C. Memo. 1971–135, affd. 459 F.2d 69 (6th Cir. 1972), at issue was the deductibility by taxpayer-husband of certain payments made in accordance with an Ohio divorce decree. In that decree, the taxpayer-husband was obligated to pay to the wife as an "equitable distribution" of the property acquired during the marriage, an amount which approximated one-half of the net worth of the parties at the time of the divorce. This distribution was made in recognition of the wife's assistance to the husband in his business and

Even assuming such a property interest could exist, it is of no benefit to Joyce in this case. Neither during the negotiations preceding the separation agreement nor during the trial of this case was any specific identification made of Alan's worth at the time of his marriage or his divorce. Nor was there any evidence of the accessions to that wealth during the marriage or of the cause of any such accessions. Finally, no attempt was made to identify or value Joyce's contributions. Compare these facts with, for example, *Wright v. Commissioner, supra; Hesse v. Commissioner, supra; Mann v. Commissioner,* 74 T.C. 1249 (1980); and *Gammill v. Commissioner, supra,* wherein there was specific evidence of the parties' assets and the wife's contributions. Alan may have been a wealthy man when he married Joyce, and Joyce may have felt that as a "partner" in the marriage she was entitled to a share of accessions to Alan's worth. These facts, however, do not give rise to a property interest which would be recognized under Ohio law. Based on the record before us, we cannot say that Joyce had an "equitable" interest in Alan's property which corresponded to the $300,000 amount. As noted, it was respondent who, on brief, raised the possibility of the existence of such an interest. Joyce made no mention of such an interest either at trial or on brief.

Furthermore, regardless of what the parties agreed to call the $300,000 provision for the benefit of the domestic relations court and for tax purposes (see *Bardwell v. Commissioner, supra*), it is rather clear that the payments on the $300,000 were in fact in the nature of support for Joyce. This amount had no relevance to the value of Alan's estate and could hardly be deemed an equitable division thereof.[14] So far as the record reveals, Joyce had no other means of support, except the "temporary" alimony for 5 years and possible rentals from a one-half interest in the Tamara Apartments, and the two children were rather young for her to go to work to earn a living. Compare *Warnack v. Commissioner, supra* at 553. In addition, it is doubtful that Joyce

---

without any apparent consideration of the separate property interests of the husband and wife. The Tax Court held that such payments were in the nature of a property settlement and not of support.

[14]While Alan did not divulge the value of his estate, Joyce told her attorney she thought it was about $8 million. There is no indication in the record that the parties even discussed a division of Alan's estate; at most, they discussed only a settlement on Joyce of an amount that was more related to her current needs than to Alan's estate.

felt she should have to earn a living in view of Alan's financial position.

For the above reasons, we must rather reluctantly conclude that the $12,000 payment made by Alan to Joyce during the year 1973 under paragraph 3(c) of the separation agreement was *in fact* in the nature of support and is includable in Joyce's taxable income for the year 1973 and is deductible by Alan in that year.

*Decision will be entered for the respondent in docket No. 10332–76.*

*Decision will be entered under Rule 155 in docket No. 4505–77.*