GERALDINE E. FARRELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
FARRELL v. COMMISSIONER
Docket Nos. 1425-86; 44249-86
United States Tax Court
T.C. Memo 1989-662; 1989 Tax Ct. Memo LEXIS 662; 58 T.C.M. (CCH) 979; December 20, 1989; As amended December 21, 1989 Harry D. Martin and *664 Thomas J. Minarcik, for the petitioner. Donna J. Pankowski and Edward F. Peduzzi, Jr., for the respondent. MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated cases respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Addition to Tax
Docket No.
Year
Deficiency
Section 6661 [1]
01425-86
1982
$ 20,064.00
--
44249-86
1983 73,535.58
$ 7,353.55
In his answer in docket No. 44249-86, respondent increased the claim for the addition to tax under section 6661 for 1983 by $ 11,030.34 to $ 18,383.89. The issues are: (1) whether two payments of $ 50,000 and $ 150,000 received by petitioner in 1982 and 1983, respectively, were alimony and thus includable in her gross income under section 71; and (2) whether petitioner is liable for an addition to tax under section 6661 for a substantial understatement of her income tax in 1983. *665 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits associated therewith are incorporated herein by this reference. Petitioner resided in Woodmere, Pennsylvania, when she filed her petitions in these cases. She married Carl Farrell on March 10, 1961. At the time of their marriage, Mr. Farrell had four children by a previous marriage, ranging in ages from 5 to 15, and petitioner had three children from a previous marriage, ranging in ages from 5 to 11. During their marriage two children were born, the first in 1962 and the second in 1964. For the first several years of the marriage, Mr. and Mrs. Farrell and all of the children lived in a house petitioner owned on Pagan Road in Erie County. Throughout the marriage petitioner did not work outside the home. She was a housewife and mother to the nine children. About 1962, Mr. Farrell went into business, creating a company named Tool-All, Inc., a subchapter S corporation, which built plastic molds. He later acquired an interest in several other businesses, namely, Acuform, Inc., Acumatic, Inc., C.A.F. Enterprises, C & F Partnership, and Precise Plastics, Inc.
*666 The Farrells experienced some financial difficulties in the first few years of their marriage. However, after about five years, Mr. Farrell's businesses began to prosper; and from about 1967 until their divorce in 1982, they lived quite comfortably. In the late 1970's they purchased a house in an affluent section of Erie, Pennsylvania. It was a southern ranch style house with an in-ground swimming pool situated on an acre lot. The new residence was well furnished since one of Mr. Farrell's hobbies was the collection of antiques. He also collected guns and wine making equipment. The Farrells did not have any serious financial worries during the later years of their marriage. In 1979, 1980, and 1981 their declared joint incomes were $ 295,875, $ 391,008, and $ 520,884, respectively. However, in February of 1980 they separated and in May of 1982 petitioner filed an action for divorce in the Court of Common Pleas of Erie County. To represent her in the divorce action she employed Jay S. Nedell, a local attorney. Mr. Farrell was represented by Michael J. Visnosky, another local attorney. At the time the divorce action was filed, petitioner was generally aware of Mr. Farrell's *667 business interests and investments but knew nothing about their value. A copy of their joint 1981 Federal income tax return was available to her; but even though he had full authority to act on her behalf, her attorney to her knowledge, never obtained any information about the value or success of Mr. Farrell's businesses or investments, never requested copies of his individual or business tax returns, and never undertook any type of discovery regarding Mr. Farrell's assets or income. In August of 1982, Mr. Farrell's assets included a 50-percent interest in Tool-All, Inc., a 50-percent interest in Acuform, Inc., a 50-percent interest in Acumatic, Inc., a 100-percent interest in C.A.F. Enterprises, Inc., a 25-percent interest in Precise Plastics, Inc., and a 50-percent interest in a partnership called Czulewicz and Farrell, or C & F. As of August 1982, Tool-All was a profitable company with approximately 30 employees. For the fiscal year ended September 30, 1981, Tool-All had sales of $ 2,402,025 and paid a total of $ 879,855 in equal salaries to its two stockholder-officers, Mr. Farrell and Mr. Czulewicz. As of September 30, 1981, Tool-All had loans payable to them in the approximate *668 amount of 1.6 million dollars of which 50 percent belonged to Mr. Farrell. During its fiscal year ended June 30, 1982, Acuform had approximately 50 employees and gross sales of $ 4,555,314 and paid a total of $ 521,000 in equal salaries to its two stockholder-officers, Mr. Farrell and Mr. Czulewicz. On June 30, 1982, Acuform had loans payable to its two stockholders in the amount of $ 890,000 of which 50 percent belonged to Mr. Farrell. Shortly after Mr. Visnosky was retained by Mr. Farrell an offer to settle the divorce action was made by Mr. Nedell. Using Mr. Nedell's offer as a guide, Mr. Visnosky drafted a document entitled "Property Settlement Agreement" (hereinafter Agreement) and forwarded it to Mr. Nedell. By a letter dated July 28, 1982, Mr. Nedell replied in part, as follows: I am sorry that I didn't get back to you, but Mrs. Farrell was in the hospital for a few days. She has learned that she is presently suffering from a heart condition, known as angina. She is not feeling very well, and has been reconsidering your offer, as it reflects her health. We would be willing to sign your Agreement as written, but my client has made an additional demand of $ 300,000.00 *669 in cash. At the present time, she thinks her life expectancy has been shortened considerably, and as a result does not feel that she would ever get the full benefit of the Agreement that you sent over. In addition, she would request that your client maintain her on a hospitalization program. I don't like to change agreements in midstream, but this is being done only because of the change of my client's status as a healthy individual, and her feelings as to her life expectancy. After telephone negotiations in early August 1982 between Mr. Nedell and Mr. Visnosky, it was informally agreed by the lawyers that Mr. Farrell would pay petitioner an additional $ 200,000 of which $ 50,000 was payable on or before August 31, 1982, and $ 150,000 was payable after December 31, 1982, but before August 13, 1983. It was also agreed that these amounts would be reflected in an addendum to the Agreement. During the week of August 16, 1982, Mr. Nedell prepared and submitted to Mr. Visnosky a document entitled "Property Settlement Agreement Addendum" (hereinafter Addendum) in which the $ 50,000 and $ 150,000 payments were referred to as " additional property settlement." The labeling of the payments *670 as "additional property settlement" was disputed by Mr. Visnosky because he believed that in the informal agreement reached with Mr. Nedell the payments were to be referred to as "additional alimony." Consequently, Visnosky refused to recommend the Addendum to Mr. Farrell unless the language was changed to read "additional alimony." Nedell agreed to the change and the Addendum was revised accordingly. Since the demand by petitioner's attorney for the additional payments was not made until after an agreement had been reached with respect to the division of the marital property, there was no further discussion of the marital property at the time the Addendum was negotiated and agreed to by Nedell and Visnosky. Mr. Farrell approved the Addendum after being advised by his accountant and by Mr. Visnosky that the additional payments would be deductible by him as alimony. On August 24, 1982, petitioner and Mr. Farrell signed the Agreement which had been negotiated in June and July as well as the separate Addendum which was negotiated in August. The Agreement provided, in pertinent part, as follows: 5. Alimony: The husband shall pay to the wife for her separate maintenance and *671 support the sum of $ 4,000.00 per month for a total of $ 48,000.00 per year, beginning September 1, 1982. 6. Termination of Alimony: The provision made herein for the support and separate maintenance of the wife at paragraph 5 shall not terminate on the death of the husband but terminate on the death of the wife, the remarriage, should the parties become divorced, of the wife, or co-habitation by the wife with a person of the opposite sex who is not a member of her immediate family within the degrees of consanguinity prohibiting marriage, and whenever any of such event occurs, the husband's obligation to pay such support and separate maintenance, as described in paragraph 5, shall cease absolutely. In the event the husband predeceases the wife, the wife shall receive the proceeds of a life insurance policy on the life of the husband in the amount of $ 250,000.00. Said payment shall discharge and act as a full acquaintance of the husband's estate and its personal representative for the alimony payment set forth in paragraph 5. * * * 7. Wife's Sole and Separate Property, Real and Personal: The following property, both real and personal, shall be the sole and separate *672 property of the wife, free and clear of any claim on the part of the husband. A. The parties hereto are the owners as tenants by the entireties with the right of survivorship all that certain piece or parcel of land commonly known as 4141 State Street, Erie, Pennsylvania which is more specifically described by Deed recorded in Erie County Deed Book 1134 at page 519. The husband shall hereby transfer and assign to the wife as her sole and separate property all of his right, title and interest in the premises described in Erie County Deed Book 1134 at page 519 by Quitclaim Deed to be executed at the time of signing of this agreement. Said Quitclaim Deed shall be held in Escrow by Michael J. Visnosky, Esquire, attorney for the husband, until such time as final Divorce Decree is entered at No. 2051-A-1982 in the Court of Common Pleas of Erie County, Pennsylvania. B. All household goods, furnishings, furniture, fixtures, appliances, linens, silverware, dishes and all other personal property presently located in the marital home shall be the sole and separate property of the wife free and clear of any claim on the part of the husband. C. All cash presently in the possession of *673 the wife shall be and remain her separate property free and clear of all claim whatsoever on the part of the husband. D. All bank accounts or accounts in a savings, building and loan or savings and loan association held in the name of the wife shall be the sole and separate property of the wife, free and clear of any claim on the part of the husband. E. The wife shall be the sole owner free and clear of any claim on the part of the husband of the 1982 Mercedes Benz station wagon. F. Any stocks, bonds or other types of securities held in the name of the wife alone shall be the sole property of the wife free and clear of any claim on the part of the husband. G. Any and all property, real or personal, acquired by the wife after February 20, 1980, shall not be considered marital property and subject to distribution under this agreement and shall remain the sole and separate property of the wife. 8. Husband's Sole and Separate Property, Real and Personal: The following property, both real and personal, shall be the sole and separate property of the husband, free and clear of any claim on the part of the wife. A. The husband is the owner of all that certain piece or *674 parcel of land commonly known as 625 Montroyal Drive, Erie, Pennsylvania, which is more specifically described by Deed recorded in Erie County Deed Book 1400 at page 407 which is subject to a first mortgage. The premises shall be the sole property of the husband and free and clear from any claim on the part of the wife. B. All household goods, furnishings, furniture, fixtures, appliances, linens, silverware, dishes and all other personal property presently located at 625 Montroyal Drive, Erie, Pennsylvania shall be the sole and separate property of the husband free and clear of any claim on the part of the wife. C. All cash presently in the possession of the husband shall be and remain his separate property free and clear of all claim whatsoever on the part of the wife. D. All bank accounts or accounts in savings, building and loan or savings and loan associations held in the name of the husband shall be the sole and separate property of the husband free and clear of any claim on the part of the wife. E. Any stocks, bonds, or other types of securities, including but not limited to all stock held by the husband in Too-All, Inc., Precise Plastic, Inc., Accu-Form, Inc., and *675 Erie Rubber, Inc., shall be the sole and separate property of the husband free and clear of any claim on the part of the wife. F. Any and all real property owned by the husband in partnership with other individuals, partnerships or corporations shall be the sole and separate property of the husband free and clear of any claim on the part of the wife. G. Any and all property, real or personal, acquired by the husband after February 20, 1980, shall not be considered marital property and subject to distribution under this agreement and shall remain the sole and separate property of the husband. The Addendum provided, in pertinent part, as follows: 2. Additional Alimony: The husband shall pay to the wife for her separate maintenance and support as additional alimony the sum of $ 200,000.00 in accordance with the following schedule: (a) The sum of $ 50,000.00 shall be due and payable on or before August 31, 1982; and (b) The sum of $ 150,000.00 shall be due and payable after December 31, 1982 and before August 13, 1983. The provisions of paragraph 6 of the Property Settlement Agreement are incorporated herein by reference as if stated in full and are equally applicable *676 to the husband's responsibility for the foregoing payments. On August 24, 1982, a Decree in Divorce was also entered by the Court of Common Pleas of Erie County. The decree specifically incorporated the Agreement and the Addendum entered on the same date by petitioner and Mr. Farrell. The Decree in Divorce also provided that the provisions of the Agreement and Addendum are subject to enforcement in accordance with the Pennsylvania Divorce Code of 1980, Act 26 of 1980, and any other applicable legislation of the Commonwealth of Pennsylvania. The decree and its incorporated documents have not been vacated or modified in any way. Pursuant to the Agreement, petitioner received monthly payments of $ 4,000 from Mr. Farrell for the months of September of 1982 through December of 1983. Pursuant to the Addendum she also received from him a payment of $ 50,000 on August 24, 1982, and a payment of $ 150,000 on or about August 15, 1983. On her individual returns for 1982 and 1983 petitioner reported the monthly payments as alimony but did not mention the other payments. On the 1983 return the income tax reported by her was $ 11,045. In a notice of deficiency mailed to petitioner on *677 November 8, 1985, respondent determined that the $ 50,000 received by petitioner in 1982 was additional alimony. In a notice of deficiency mailed to petitioner on October 22, 1986, respondent determined that the $ 150,000 received by petitioner in 1983 was additional alimony. Respondent also determined that for 1983 petitioner was liable for an addition to tax under section 6661 in the amount of $ 7,353.55. In his answer filed in docket No. 44249-86 respondent claimed an increase in the addition to tax of $ 11,030.34 to $ 18,383.89. On his individual returns for 1982 and 1983, Mr. Farrell deducted as alimony the payments of $ 50,000 and $ 150,000 made to petitioner. In deficiency notices sent to Mr. Farrell, respondent disallowed these deductions and determined deficiencies in his income tax for 1982 and 1983. Mr. Farrell paid the determined deficiencies and filed claims for refund which at the time of trial had been disallowed or had not been acted upon by respondent. At the time of trial of these cases, a suit by petitioner and certain other former clients of Jay S. Nedell was pending against Mr. Nedell in the Court of Common Pleas of Erie County. The suit contains allegations *678 of malpractice. Mr. Nedell was not practicing law in Erie County at that time. OPINION Payments Received by Petitioner Pursuant to Addendum
The principal issue presented in these cases is whether the payments of $ 50,000 and $ 150,000 received by petitioner from her former husband pursuant to the Addendum are alimony and thus includable in her gross income under section 71, [2] as respondent contends, or payments made in consideration of petitioner's relinquishment of an interest in property retained by her husband, as petitioner contends. *679 Under section 71(a)(1), as in effect for the years in question, a divorced "wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital relationship, is imposed or incurred by the husband under the decree." It is apparent, therefore, that in order for the disputed payments to be includable in petitioner's income as alimony under section 71(a)(1), two requirements must be met: (1) the payments must have been periodic and (2) the payments must have been made to discharge a legal obligation arising out of the marital relationship between petitioner and Mr. Farrell. In section 71(c)(1) there is set forth the general rule that "installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree * * * shall not be treated as periodic payments." But section 71(c)(2) goes on to provide that if the principal sum specified in the decree is to be paid or may be paid over a period ending more than 10 years from the date of the decree, then the installment payments shall be treated as *680 periodic. In the cases before us, the Addendum, which is incorporated into the divorce decree, specifies that the sum of $ 200,000 is to be paid to petitioner in two payments, one of $ 50,000 due and payable on or before August 31, 1982, and one in the amount of $ 150,000 due and payable after December 31, 1982, but on or before August 13, 1983. Further the Addendum specifically states that these amounts are to be paid to petitioner as "additional alimony" and "for her separate maintenance and support." Since the sum of the payments designated additional alimony is stated, and since the payments are not extended over a period ending more than ten years from the date of the decree, petitioner argues that the payments are not periodic payments and are thus not includable in her income as alimony. The above argument of petitioner is contrary to section 1.71-1(d)(3)(i), Income Tax Regs., which provides as follows: Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, *681 or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. [Emphasis added.] The Addendum, which placed on Mr. Farrell the obligation to make the $ 200,000 in payments designated additional alimony, incorporated paragraph 6 of the Agreement which included the contingencies applicable to the $ 4,000 monthly payments provided for in the Agreement, which payments petitioner admits constitute alimony. The contingencies placed upon the monthly payments by paragraph 6 included the death or remarriage of petitioner. Since these contingencies are identical to the contingencies set forth in section 1.71-1(d)(3)(i)(a), Income Tax Regs. *682 , the payments of $ 50,000 and $ 150,000 constitute periodic payments under the regulation. This conclusion is not affected by the fact that the $ 50,000 payment was made on August 24, 1982, the date the decree was entered, because that payment was not due under the terms of the Addendum until August 31, 1982. Consequently, if petitioner had died or remarried before August 31, 1982, Mr. Farrell would have been under no obligation to pay the $ 50,000. Thus under the terms of the Agreement and Addendum, which were incorporated into the divorce decree, both of the payments designated additional alimony were subject to contingencies and hence, the first part of the test established by section 1.71-1(d)(3)(i)(a), Income Tax Regs., was met. The second part of the test set out in section 1.71-1(d)(3)(i)(b), Income Tax Regs., is whether such payments are in the nature of alimony or an allowance for support. This part of the test is the same as the requirement under section 71(a) that to be considered alimony payments must be made in discharge of a legal obligation imposed by the marital relationship. See Mirsky v. Commissioner, 56 T.C. 664, 672 n.2 (1971). *683 Consequently, the disposition of this issue, as posed by the regulation, will not only dispose of the requirement that the payments be periodic, but it will also dispose of the requirement that the payments be made in discharge of a legal obligation arising because of the marital relationship. Petitioner next argues that we should reject the application of the "periodic payment" test of section 1.71-1(d)(3)(i), Income Tax Regs., because it is contrary to the plain language of the statute and is therefore invalid. She contends that the regulation broadens the term "periodic payment" beyond acceptable limits because it uses the words "alimony" and "contingencies" which do not appear in section 71. We find no merit in petitioner's argument. The term "alimony" is an integral part of section 71. The use in the regulation of the terminology "in the nature of alimony or an allowance for support" does not broaden the scope of section 71. Cf. Bishop v. Commissioner, 55 T.C. 720, 724 (1971). Likewise, the use of the word "contingencies" does not broaden *684 the scope of the statute. Even petitioner argues that the payments in question are not periodic because there was a "fixed principal sum," when the word "fixed" does not appear in the statute, but is clearly implied by the statutory language which provides for "discharging a part of an obligation the principal sum of which is * * * specified in the decree." Sec. 71(c)(2). The identification of contingencies is certainly not inconsistent with the statute. The regulation here in question has been accepted and applied for many years. Its validity has been addressed and upheld by this Court and others. Salapatas v. Commissioner, 446 F.2d 79, 81-82 (7th Cir. 1971), affg. a Memorandum Opinion of this Court; Martin v. Commissioner, 73 T.C. 255, 259-261 (1979); and Kent v. Commissioner, 61 T.C. 133, 137-138 (1973). Petitioner's next argument is that the characterization of the payments in the Addendum should not be binding on her for tax purposes because she had inadequate legal representation in the divorce proceeding. While inadequate legal representation may be persuasive in a malpractice action against her former attorney, *685 it cannot serve as a basis for rewriting an agreement several years after the entry of the divorce decree. This is especially true when the result may be a significant, and unbargained for, tax cost to the other party to the agreement. The terminology adopted by petitioner and Mr. Farrell was negotiated by their individual attorneys, each of whom was independently retained, had full authority to act for their client, and bargained at arm's length for the provisions and the terminology used in the Agreement and the Addendum. Under these circumstances petitioner is bound by the result of her counsel's negotiations. If she has a claim for inadequate legal representation, her proper remedy is to proceed with the malpractice action in the Court of Common Pleas. Respondent contends that since petitioner did not challenge in the Court of Common Pleas the validity of the divorce decree, which incorporated the Agreement and Addendum, she is estopped from collaterally attacking the decree for Federal tax purposes in this Court. This contention has been repeatedly rejected because it is well settled that *686 the determination of whether payments are in the nature of alimony or a part of a property settlement does not necessarily turn on the labels assigned to the payments by the divorce court, in the divorce decree, or by the parties in their agreement. Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); Beard v. Commissioner, 77 T.C. 1275, 1283-1284 (1981). While state law controls the creation of a property right, Federal law controls the tax consequences. Schottenstein v. Commissioner, 75 T.C. 451, 462 (1980). Further, while the parties agree that the characterization of the two disputed payments is essentially a question of fact to be determined from a consideration of all of the facts and circumstances involved in these cases, they each vigorously contend that when appropriate consideration is given to all such facts and circumstances they prevail. Respondent argues that such consideration leads to the conclusion that the payments were clearly alimony with petitioner contending that the conclusion is just as clear that the payments represented a further *687 division of the marital property. We agree with the parties to the extent that the characterization of the payments is essentially a question of the parties' intent, which in turn, is to be resolved from all of the facts and circumstances. Hesse v. Commissioner, 60 T.C. at 691 (1973). On this issue the burden of proof is on petitioner to show that respondent's determination is in error. Rule 142(a). In these cases, petitioner's burden includes for all practical purposes establishing by a preponderance of the evidence that the Agreement and Addendum do not mean what they say. In determining the intent of the parties, in these cases we use for guidance the seven factors enumerated in Beard v. Commissioner, 77 T.C. at 1284-1285. Each of the Beard factors and their bearing upon these cases are discussed below. (1) Did the parties in their agreement express or imply an intention to effect a division of their assets with the disputed payments? The disputed payments were made pursuant to the Addendum which clearly labeled the payments as additional *688 alimony. The Agreement which was incorporated into the Addendum specifically provided that the payments were for petitioner's separate maintenance and support. The payments were also subject to the same contingencies which would have terminated the undisputed alimony payments of $ 4,000 per month. The labels used by the parties in the structure of the agreement have to be given weight in determining the parties' intent. The probative value of the labels is greater when, as here, the labels were the subject of negotiations and each party was represented by independent counsel, and where the agreement contains separate provisions for support and for the division of marital property. Schottenstein v. Commissioner, 75 T.C. at 457. Fashioning a divorce settlement agreement in accordance with its tax consequences is an appropriate and legitimate practice. Fox v. United States, 510 F.2d 1330, 1334 (3d Cir. 1975). The use of the term "additional alimony," and the specification that the payments were for petitioner's "separate maintenance and support," cannot *689 be considered an oversight. The parties, through their respective counsel, negotiated such terminology. They also negotiated the contingencies which would result in termination of the obligation to make the additional payments. The division of the marital property was negotiated and incorporated into the Agreement which was drafted prior to August 16, 1982. The division of property appeared in paragraphs 7 and 8 of the Agreement. In the Agreement separate and distinct provisions were used for alimony and for support. Paragraphs 7 and 8 were not disturbed by the Addendum. Placing the division of property in a separate part of the Agreement from the alimony provision and failing to refer to the property division in the Addendum which provides for the disputed payments as additional alimony, are all clear indications that the parties did not consider the payments as a further division of marital property. Warnack v. Commissioner, 71 T.C. 541, 553-554 (1979). Petitioner was obviously aware of the provision contained in the Agreement prior to having her counsel demand the additional payments which were inserted in the Addendum, and she reviewed both documents on *690 the day she signed them. Therefore, she knew, or should have known, that in the documents the additional payments were not referred to as being in exchange for her surrender of property but for her support and maintenance. Cf. Gammill v. Commissioner, 73 T.C. 921, 927 (1980), affd. 710 F.2d 607 (10th Cir. 1982). In this respect, the Agreement reads as follows: Representation of Parties by Counsel: Each party has been represented by an attorney who was selected by the party whom he represents, in the negotiation and preparation of this agreement. This agreement has been fully explained to each party by that [party's] attorney. Each party has carefully read this agreement and understands that it is the entire agreement between the parties and is completely aware, not only of its contents but of its legal effect. Consistent with the additional alimony label arrived at by the attorneys in the drafting of the Agreement and Addendum is the absence of any indication that property rights of petitioner were the subject of the negotiations leading to the Addendum. Furthermore, the record contains no evidence of any change in circumstances which *691 would have caused her to renegotiate the property division as set out in the Agreement drafted prior to August 16, 1982. Such changes would have included the discovery of new or hidden assets or a substantial change in the nature or value of the property which she was to receive under the Agreement. In fact, there is no indication in the record that petitioner demanded the additional payments in exchange for any real or perceived right to additional marital property. To the contrary, the only indication of the reason for the Addendum is contained in the letter from Mr. Nedell to Mr. Visnosky and Mr. Visnosky's testimony as to their telephone conversations regarding this matter. Correspondence between the attorneys during the negotiation is probative as to the intent of the parties to the Addendum. Gerlach v. Commissioner, 55 T.C. 156, 168 (1970). The letter and the testimony clearly show that her demand for the additional payments was made as a result of a change in petitioner's health which she discovered after the Agreement was drafted and which she believed might reduce her chances of receiving the maximum benefit from the alimony payments of $ 4,000 per month. *692 These were the representations used by petitioner's counsel in order to obtain Mr. Farrell's agreement to make the additional payments. We think it is also significant that Mr. Farrell did not agree to the additional alimony of $ 200,000 until he was advised that as alimony it was deductible by him. Even though the tax consequence intended or expected by a party to an agreement does not control the consequence, the party's belief as to what the consequence will be is a circumstance which has to be considered in determining their intent. Still another indication that the parties did not consider the disputed payments as being in exchange for a property interest is the absence of any interest during the deferral of the second payment. If petitioner viewed the payments as being in satisfaction of her property rights, interest on a deferred payment would have been a logical demand. Schottenstein v. Commissioner, 75 T.C. at 460. The record before us is devoid of any reliable evidence that petitioner and Mr. Farrell intended the additional payments as a further division of their marital property. In fact, the record as a whole clearly establishes an intent to *693 increase petitioner's alimony by the amount of the payments. (2) Did the recipient surrender valuable property in exchange for the payments, i.e., did she surrender property interests recognizable under state law for the payments? In cases of this nature arising with respect to divorce decrees or agreements entered prior to 1985, the distinction [3] between a payment pursuant to a marital obligation and a payment in satisfaction in whole or part of a property settlement is vital because "Payments which are part of a property settlement are capital in nature and, therefore, are not subject to the provision of section 71." Gammill v. Commissioner, 73 T.C. at 926. However, if the recipient of a payment made pursuant to a divorce decree does not have any property rights under applicable state law to relinquish in return for the payment, then the payment is treated as alimony under section 71. Schottenstein v. Commissioner, 75 T.C. at 460-462. Hence to prevail in these cases, it is incumbent upon petitioner to show what property rights she had and which of *694 those rights were surrendered in consideration for the additional payments. One of the factors used by the courts in characterizing a payment as either alimony or property settlement is whether the payment must be taken into consideration in determining whether the total property awarded to the recipient is approximately equal to one half of the property accumulated by the parties during their marriage. This factor is particularly significant where the taxpayers reside in a community property state because, generally speaking, in community property states both spouses have an equal interest in the marital property. Pennsylvania, however, is not a community property state and Section 401(d), 23 Pa. Cons. Stat. Ann., Pennsylvania Divorce Code of 1980 provides as follows: *695 In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including: (1) The length of the marriage. (2) Any prior marriage of either party. (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties. (4) The contribution by one party to the education, training, or increased earning power of the other party. (5) The opportunity of each party for future acquisitions of capital assets and income. (6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits. (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker. (8) The value of property set apart to each party. (9) The standard of living of the parties established during the marriage. (10) The economic circumstances *696 of each party at the time the division of property is to become effective. Under the foregoing section an equal distribution of property is not required in order for the distribution to be considered equitable. Morschhauser v. Morschhauser, 357 Pa. Super 339, 516 A.2d 10, 15-16 (1986). In fact, the divorce court or master is not permitted to use as a starting point an equal division in arriving at an equitable distribution. Fratangelo v. Fratangelo, 360 Pa. Super 487, 520 A.2d 1195 (1987). Therefore, petitioner's interest under Pennsylvania law in the marital property may or may not be 50 percent of the total value of the marital estate as of the date of the divorce. Furthermore, in determining whether alimony is necessary and, if so, its nature, amount, duration, and manner of payment, the divorce courts in Pennsylvania are required to consider the marital property as well as the relative assets and liabilities of the parties and their respective contributions. *697 Section 501(b), 23 Pa. Cons. Stat. Ann., Pennsylvania Divorce Code of 1980. [4]
*698 It should be noted that the list of factors to be considered by the Pennsylvania courts in awarding and determining the amount of alimony includes substantially all of the factors that are to be considered in arriving at an equitable distribution of marital property. Although the record is not clear, it appears that all property, except the marital residence which was held as tenants by the entirety, was titled in Mr. Farrell's name at the time the divorce action was filed. It also appears that petitioner entered the marriage with some property of her own. However, the record contains no indication of the value of the separate property brought into the marriage by petitioner or what happened to that property during the marriage. Consequently, petitioner's rights to property are limited to those set forth in the equitable distribution provisions of section 401(d) of the Pennsylvania Divorce Code. The record, however, does not reflect that any attempt was ever made to calculate the amount of property to which petitioner might have been entitled under section 401(d) of the Divorce Code. The absence of such a calculation plus the presence of certain other factors, such as petitioner's *699 age at the date of the divorce, the natural concern over her health problems discovered after the Agreement was negotiated, as well as the lack of any evidence of employment experience gained by her either before or during the marriage, clearly indicate that the logical aim of all parties at the time the disputed payments were negotiated, agreed to, and inserted in the Addendum, would have been to provide petitioner with continued maintenance and support, i.e., alimony. Further support for this conclusion is the fact that a substantial property settlement had already been negotiated, agreed to by Mr. Farrell and the lawyers for both parties, and inserted in the Agreement before petitioner discovered her health problem and demanded the additional payments. Finally, since the elements for an equitable distribution of property under section 401(d) and the elements for an award of alimony under section 501(b) of the Divorce Code are very similar, any ambiguity concerning the purpose of the payments which remains after a consideration of all the facts and circumstances must be resolved against petitioner, the party with the burden of proof. (3) Were the payments fixed in amount and not *700 subject to contingencies such as death or remarriage of the recipient? The payments were contingent and would have terminated upon the death or remarriage of petitioner. They were not a fixed sum payable in all events. (4) Were the payments secured? In paragraph 6 of the Agreement, Mr. Farrell was required to maintain an insurance policy on his life in the amount of $ 250,000. The policy was payable to petitioner and upon his death the payment of the policy would have discharged his estate from any further liability for the alimony payments of $ 4,000 per month. This provision was incorporated into the Addendum and made applicable to the additional payments of $ 50,000 and $ 150,000. There was no other security for the disputed payments by lien or otherwise. (5) Did the total property awarded to the recipient equal approximately one half of the property accumulated by the parties during marriage, with or without consideration of the payments at issue? This factor was fully discussed under (2) above. (6) Was the need of the recipient taken into consideration in determining the amount of the payments? Petitioner's current needs were not taken into consideration in determining *701 the additional payments set forth in the Addendum. As indicated by the testimony of counsel for Mr. Farrell and as supported by correspondence from Mr. Nedell to Mr. Visnosky, the additional payments in the Addendum amounted to an acceleration of part of the alimony which petitioner was to receive under the terms of the Agreement. In the negotiations leading to the Addendum, it was never contended by petitioner's counsel that her current financial needs were justification for the additional payments. (7) Was there a separate provision for support elsewhere in the decree or agreement? In the Agreement, provision was made for monthly payments of $ 4,000 to petitioner for her support. The Agreement also contained a division of marital property. The additional payments of $ 50,000 and $ 150,000 were required under the Addendum and were referred to as support and additional alimony. Both the monthly payments in the Agreement and the additional payments in the Addendum were subject to the same contingencies and had the same security, i.e., the $ 250,000 insurance policy on Mr. Farrell's life. In support of her argument that the payments in question were for a property settlement and *702 not alimony petitioner relies upon our decisions in Mirsky v. Commissioner, 56 T.C. 664 (1971); Westbrook v. Commissioner, 74 T.C. 1357 (1980); and Norton v. Commissioner, 16 T.C. 1216 (1951), affd. 192 F.2d 960 (8th Cir. 1951). We have considered these decisions and find many factual differences. They are clearly distinguishable and of no benefit to petitioner. In conclusion we are satisfied from a review of all of the facts and circumstances that the additional payments of $ 50,000 and $ 150,000 received by petitioner in 1982 and 1983, respectively, constitute alimony, and therefore, are includable in petitioner's gross income under section 71. In view of this conclusion, we need not consider respondent's contention that the rule in Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), vacating 44 T.C. 549 (1965), is applicable here. Addition to Tax Under Section 6661
Under section 6661(a) an addition to tax is imposed on a substantial understatement of income tax. The addition *703 to tax is 25 percent of the understatement. Section 6661(a) is applicable to all assessments made after October 21, 1986. On her Federal income tax return for 1983 petitioner reported an income tax of $ 11,045. However, we have found that petitioner failed to report the $ 150,000 in alimony which she received in 1983. As a result, she understated her income tax for 1983 by $ 73,535.58 which is in excess of ten percent of the tax of $ 84,580.58 required to be shown on the return. Therefore, the understatement of tax meets the statutory definition of "substantial understatement" contained in section 6661(b)(1)(A). In the Addendum, the additional payment of $ 150,000 in 1983 was clearly identified additional alimony and was intended for petitioner's separate maintenance and support. It is clear that monies received pursuant to a divorce decree as alimony or as maintenance and support are includable in the recipient's gross income under section 71. Petitioner not only failed to report the $ 150,000 payment but she also failed to disclose on her 1983 return, or in a statement accompanying the return, the facts relevant to the payment. Hence the substantial understatement cannot *704 be reduced under the provisions of section 6661(b)(2)(B). Therefore, petitioner is liable for the addition to tax under section 6661(a) in the amount of $ 18,383.89. Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 71 as amended and in effect for the years 1982 and 1983 reads in pertinent part as follows: Alimony and separate maintenance payments (a) General rule. -- (1) Decree of divorce or separate maintenance. -- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * * (c) Principal sum paid in installments. -- (1) General rule. -- For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. -- If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. (d) Rule for husband in case of transferred property. -- The husband's gross income does not include amounts received which, under subsection (a), are (1) includible in the gross income of the wife, and (2) attributable to transferred property. (e) Cross references. -- (1) For definitions of "husband" and "wife", see section 7701(a) (17). (2) For deduction by husband of periodic payments not attributable to transferred property, see section 215. (3) For taxable status of income of an estate or trust in case of divorce, etc., see section 682.↩
3. The distinction was substantially, if not entirely, eliminated with respect to divorce decrees or agreements entered after December 31, 1984, by amendments to section 71↩ by Pub.L. 98-369 (Tax Reform Act of 1984).
4. Section 501(b) provides: In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including: (1) The relative earnings and earning capacities of the parties. (2) The ages, and the physical, mental and emotional conditions of the parties. (3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits. (4) The expectancies and inheritances of the parties. (5) The duration of the marriage. (6) The contribution by one party to the education, training or increased earning power of the other party. (7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home. (8) The standard of living of the parties established during the marriage. (9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to seek appropriate employment. (10) The relative assets and liabilities of the parties. (11) The property brought to the marriage by either party. (12) The contribution of a spouse as homemaker. (13) The relative needs of the parties. (14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.↩