Jean W. WRIGHT, Petitioner-Appellant (Cross-Appellee),

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee (Cross-Appellant).

William C. WRIGHT and Ellen W. Wright, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant (Cross-Appellee).

Nos. 75–1170 to 75–1176.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1975.

Decided Oct. 28, 1976.

---

594

Bruce C. O'Neill, Gerald J. Kahn, Milwaukee, Wis., for Wright.

Scott P. Crampton, Asst. Atty. Gen., Daniel F. Ross, Atty. Tax Div., Dept. of Justice, Washington, D.C., for C. I. R.

Before STEVENS, Circuit Justice,[*] FAIRCHILD, Chief Judge and CAMPBELL, Senior District Judge.[**]

WILLIAM J. CAMPBELL, Senior District Judge.

These appeals are taken from a single decision of the United States Tax Court rendered in four consolidated cases [1] wherein petitioners challenged certain federal income tax deficiency determinations made by the Commissioner of Internal Revenue.[2] The issues on appeal are those which were before the Tax Court:

"(1) Whether the cash payments made by William C. Wright during the calendar years 1968, 1969, and 1970 to his former wife, Jean W. Wright, are includable in her gross income for such years as alimony under the provisions of section 71, I.R.C.1954,[3] and consequently deductible for such years by William C. and Ellen W. Wright under the provisions of section 215; and

(2) Whether annual premiums paid by William C. Wright during the calendar years 1968, 1969, and 1970 on a term life insurance policy owned by his former wife, Jean W. Wright, are includable in her gross income for such years as alimony under the provisions of section 71 and consequently deductible for such years by William C. and Ellen W. Wright under the provisions of section 215."

In the Tax Court, the parties stipulated to all facts relevant to a determination of the foregoing issues. Those facts have been set forth in the Tax Court's opinion, and may be summarized as follows:

William C. Wright (William) and Jean W. Wright (Jean) were married in Milwaukee, Wisconsin on January 31, 1948. In 1967, William filed for divorce and for custody of their minor children. Jean filed a counterclaim seeking a divorce, alimony, a division of property, attorneys' fees, costs, and custody of the children. On October 4, 1967, the action for divorce came to trial, the parties having elected to proceed on Jean's counterclaim. The parties entered into a stipulation in open court with regard to the disposition of property owned by each of them, custody of their children, alimony, attorneys' fees and court costs. In all pertinent respects, the stipulation of the parties was accepted and adopted by Judge L. J. Foley, Jr. of the Circuit Court for Milwaukee County, Wisconsin in his findings of fact, conclusions of law and judgment oral-

---

[*] Mr. Justice Stevens participated initially as Circuit Judge; on and after December 19, 1975, he participated as Circuit Justice.

[**] Senior District Judge William J. Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

1. *William C. Wright and Ellen W. Wright v. Commissioner* (No. 830–72); *William C. Wright and Ellen W. Wright v. Commissioner* (No. 4104); *Jean W. Wright v. Commissioner* (No. 1356–72) and *Jean W. Wright v. Commissioner* (No. 1991–72), 62 T.C. 377.

2. The Commissioner took inconsistent positions in his deficiency determinations against petitioners, thus insuring the recovery of back taxes from whichever taxpayer was determined by the Court to be liable. Thus, he determined deficiencies against William C. and Ellen W. Wright for the years 1968, 1969 and 1970 in the amounts of $8,603.13, $14,963.76 and $14,367.14, respectively, while also determining de-

ficiencies against Jean W. Wright, for the same years, in the amounts of $6,667.59, $7,330.41 and $7,093.34, respectively. The inconsistency arises from the fact that, in each instance, the correctness of the Commissioner's ruling rests on whether or not certain payments made by William were income to Jean under section 71(a) and therefore deductible by William under section 215. To the extent that they are, the deficiency against Jean is correct and that against William is incorrect. On the other hand, to the extent that such payments are not income to Jean, neither are they deductible by William, in which event the Commissioner's deficiency determination is correct as to William and incorrect with respect to Jean.

As the Commissioner's brief indicates, his cross-appeals to this Court "are for protective purposes only."

3. All references are to the Internal Revenue Code of 1954.

ly made at the hearing and included as part of the transcript thereof. The court found, on the basis of her counterclaim, that Jean was "entitled to an absolute divorce."

The parties stipulated that their combined net worth was $1,065,122.00. Of this amount, assets worth $227,752.00, consisting of property which was either inherited from her mother or purchased with the proceeds of that inheritance, were owned by Jean. The remaining assets, valued at $837,370.00, had been purchased and were owned by William.

At the divorce hearing, Jean acknowledged under oath that she understood alimony was to be denied; William acknowledged that he understood there was to be a full and complete division of estate in lieu of any claim upon him by Jean for alimony.

Subsequent to the hearing, Jean's attorney submitted proposed findings of fact and conclusions of law, including the following:

"Twenty-first. That alimony be and hereby is denied.

\*　\*　\*　\*　\*　\*

Twenty-fifth. (a) That as and for a complete division of estate and to complete the division of property of the parties, the plaintiff shall pay to the defendant the sum of $228,000.00 within ten and one-half (10½) years of October 4, 1967, . . ."

William subsequently objected to these proposed findings of fact and conclusions of law, contending that they did not conform with his understanding of the parties' stipulation. His attorney submitted an alternate conclusion of law which stated:

"25a That alimony be and hereby is denied and in lieu of said alimony and in full satisfaction of any claim therefore, and as a complete division of estate and to complete the division of property of the parties, the plaintiff shall pay to the defendant the sum of $228,000.00 in 10½ years of entry of judgment, said sum to be paid at the rate of $2,000.00 each month for a period of six months and $1,800.00 each month thereafter for a period of 10 years."

Jean's attorney argued that the lump sum payment of $228,000.00 constituted a division of the estate, not alimony, and that at the time the 10½ year period was agreed upon, she did not consider the payment as alimony and would not report it as such. William's attorney argued that the 10½ year period provided for in the stipulation was designed to permit William an income tax deduction for the payments made over that period of time.

On January 29, 1968, the court entered its findings of fact and conclusions of law, including the following:

"Twenty-second. That alimony be and hereby is denied.

Twent-third. [sic] That the plaintiff, William C. Wright, shall maintain the present $200,000.00 of life insurance, being with the Northwestern Mutual Life Insurance Company. Policy No. 5 553 595, date of issuance, August 22, 1963 [sic], of which the defendant is owner in full force and effect and shall maintain the defendant as beneficiary thereon for as long as said policy shall provide and at least to age 65 and shall keep the defendant as beneficiary of all the proceeds of said policy until she dies or remarries; that if there are any proceeds of this insurance that the defendant collects, whatever is not used by the defendant in her lifetime shall be left at the time of her death to the children of the parties, either by her will or by trust or by separate trusts in her will.

\*　\*　\*　\*　\*　\*

Twenty-sixth. (a) That as and for a complete division of estate and to complete the division of property of the parties, the plaintiff . . . shall pay the defendant the sum of $228,000.00 within ten and one-half (10½) years of October 4, 1967; . . ."

The decree then set forth the terms under which the $228,000.00 was to be paid, requiring that William make payments of not less than $2,000.00 per month for the first six months, and no less than $1800.00 per month over a 10½ year period, until the

full $228,000 has been paid. The divorce decree further provided that payment of this sum was to be secured by sufficient marketable securities in the investment portfolio awarded to William, and that said securities were to be placed in escrow under terms and conditions suitable to secure the payment of the money awarded to Jean. In the event of William's death prior to full payment of the $228,000.00, Jean was to be paid promptly the balance due, either from the estate of William C. Wright or from the escrow account, unless the estate "is not liquid or is insolvent, or impaired in any manner," in which event the balance due was to be paid from the escrow account.

The value of the assets awarded to Jean under the divorce decree, including the present value of the $228,000.00 lump sum payment, was determined to be $459,018.00. The value of the assets awarded to William was determined to be $606,104.00. In May of 1968, the parties executed a mutual release which, in part, stated: "WHEREAS, said judgment of divorce which was entered February 2, 1968 provided for, among other things, a property settlement between the parties in lieu of alimony; . . . .".

During the calendar years 1968, 1969 and 1970, William paid Jean $22,200.00, $21,-600.00, $21,600.00, respectively, as installments on the principal sum of $228,000.00. He also paid in those years, respectively, $1,505.50, $1,459.50, and $1,415.50 to Northwestern Mutual Life Insurance Company as premiums on the $200,000.00 term life insurance policy referred to in the twenty-third paragraph of the decree.

The Tax Court determined that the installment payments made by William to Jean should have been included in Jean's gross income for the years 1968, 1969 and 1970, pursuant to section 71, and that William was entitled to deduct the amounts of said payments for those years pursuant to section 215(a). The court further held "that Jean did not constructively receive an economic benefit under the [insurance] policy and no amount is includable in her income because of the payments of the premium on this policy by William." According-

ly, the premiums paid were held not to be income to Jean, and not deductible by William.

On appeal, Jean contends that the Tax Court erred in construing the installment payments as "periodic payments" within the meaning of section 71(a), and therefore taxable income to her. William contends that the court erred in holding that no part of the insurance premiums constituted income to Jean, thus disallowing his claim to deductions under section 215.

Section 71 provides that where "periodic payments" are received by a divorced wife from her former husband subsequent and pursuant to a decree of divorce "in discharge . . . of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree . . . .", such payments are included in the wife's gross income.

Under Section 71(c), installment payments discharging an obligation to pay a principal sum specified in the decree are not to be treated as "periodic payments" within the meaning of Section 71(a) unless the decree provides that the principal sum "is to be paid or may be paid over a period ending more than 10 years from the date of such decree . . . .", in which event the amount received constitutes a "periodic payment" within the meaning of Section 71(a) "to the extent of 10 percent of the principal sum." Under Section 215, the husband may deduct "amounts includable under Section 71 in the gross income of his wife . . . ."

█ Thus, to be includable under Section 71 in the gross income of the wife, the principal sum must be payable in installments over a period in excess of ten years (Section 71(c)(2)) and must be in discharge of an obligation imposed under the decree because of the marital relationship (Section 71(a)). This latter requirement "contemplates a payment made in pursuance of the husband's obligation of support and not in satisfaction of some property rights of the former spouse." *Van Orman v. Commissioner,* 418 F.2d 170 (7th Cir. 1969).

The Tax Court held that the principal sum ($228,000.00) could be paid in installments over a period of 10½ years and that these installments therefore constituted "periodic payments" for the purposes of Section 71(a). The Court further held that William's obligation to so compensate Jean was due to "their marital and family relationship", i.e. pursuant to William's obligation of support rather than in satisfaction of Jean's property rights.

On appeal, Jean challenges both of these findings. She argues that the record is silent as to her need for support, that she had substantial property of her own and that the divorce court's decree reflects an intention that the payments be part of a property settlement, not contributions toward her support. She also notes that the payments were not subject to the contingencies of death or remarriage, and were secured. The Tax Court's decision, she contends, also ignores two decisions of this Court, *Van Orman v. Commissioner, supra,* and *Houston v. Commissioner,* 442 F.2d 40 (7th Cir. 1970).

■ In holding that the payments "were intended by the parties to be payments in discharge of a legal obligation which was imposed on her former husband, William because of the marital relationship", the Tax Court correctly observed that the question of whether payments are made in recognition of the general obligation to support or in settlement of a wife's property rights depends upon the facts and circumstances of each case. The use of a particular label in the divorce decree or settlement agreement is not conclusive; nor is any other factor irrebuttable proof of the parties' intentions. While we consider this a close and difficult case, we have concluded that the Tax Court's determination should be upheld.

Among the factors which we believe supportive of this conclusion is the fact that the $228,000.00 awarded to Jean was obviously not paid in exchange for tangible property owned by her at the time of divorce. That property, valued at $227,-752.00, was separately awarded to her un-

der the decree. In addition, she received property owned by William consisting of furnishings valued at $20,000.00, two automobiles and the discharge of her liabilities in the amount of $41,266.00.

In response to Jean's contention that the $228,000.00 was paid in exchange for her inchoate rights to her husband's property, the Tax Court held that such rights do not establish co-ownership of the property held in the husband's name, and from this premise seems to have concluded that the loss of inchoate rights through divorce cannot support a division of property. Thus, the Court concluded that "Jean did not surrender any property interests or give up anything that is recognized as supporting a division of property in exchange for the disputed payments other than her right of alimony."

■ To the extent that the court held that surrender of inchoate rights cannot support a division of property, we disagree. Where the record clearly shows that the parties so intended the payments for this purpose, surrender of a wife's inchoate rights in exchange for a lump sum payment, to be made in installments over a number of years, might well preclude a finding that the payments were made in pursuance of the husband's obligation of support. The intention of the parties is the principal determinant. But here, the record is not clear and, in fact, is silent respecting the surrender of inchoate rights and the payment of a lump sum in exchange therefor. It appears, rather, that the parties contemplated a division of property on the basis of their respective ownership at the time of divorce, plus payments for Jean's support to be made over a period of 10½ years.

Further supportive of this finding is the use of a 10½ year payment period. Had the parties intended these to be installment payments under Section 71(c)(1), rather than periodic payments under Section 71(a), they could easily have provided that the principal sum of $228,000.00 must be paid within ten years. In addition, we note that the release signed by the parties following

issuance of the decree referred to "a property settlement between the parties in lieu of alimony", which Jean had sought in her counterclaim for divorce.

As Jean contends, the fact that the payments were for a fixed sum, were secured and were not contingent upon death or remarriage is indicative of a division of property rather than payment of support. So also is the divorce court's adoption, and inclusion in the divorce decree, of the findings and conclusions submitted by Jean's attorney. We find, however, that these conclusions are more than counterbalanced by those factors indicating that the payments were intended for the purpose of support rather than as a division of property. As the Tax Court noted, a payment of a fixed and secured sum over a definite period of time may nevertheless be intended to discharge the general obligation of support. It is not uncommon for the parties to provide for such payments, in lieu of alimony, where they wish to insure that the decree of divorce will not be subject to later modification by the Court.

Contrary to Jean's contention, we do not consider the result in this case to be inconsistent with our previous decision in *Van Orman* and *Houston, supra.* In *Van Orman,* the "Property Settlement Agreement" obliged the taxpayer to purchase a home for his former wife. The home was to be selected by her and was to cost not more than $40,000.00. The taxpayer was required to deliver free and clear title to the home to his former wife within ten years.

In early 1962, he paid $7700.00 down on the purchase price of a home and borrowed the remainder of the $37,500.00 purchase price, secured by a mortgage. For the years 1962 and 1963, he attempted to deduct the mortgage and home insurance payments under Section 215(a). The Tax Court's decision upholding the Commissioner's disallowance of these deductions was affirmed by this Court. As Jean argues, we held that Section 71(a)(1) "contemplates

a payment made in pursuance of the husband's obligation of support and not in satisfaction of some property rights of the former spouse." While we identified certain factors which are also present in this case as indicating the satisfaction of a property right rather than the payment of periodic support,[4] we also pointed out that title to the home was to be delivered within the ten year limitation period of Section 71(c). More important, unlike the instant case, the Agreement provided for support payments, requiring "alimony of [$1300.00] to [$900.00] per month for a period of ten years and one month, the specific amount depending on taxpayer's income during that period." 418 F.2d at 171. No such separate provision for the payment of support was included in the Wright divorce decree.

Contrary to Jean's contention, we find *Houston* supportive of the Tax Court's decision. In that case, Houston (husband) was obliged under the settlement agreement to transfer assets worth $505,699.44 to Schwab (wife). He was to convey non-cash assets worth $90,699.14 and $415,000.00 in cash, the latter to be paid through the immediate transfer of $115,000.00 and the annual payment of $25,000.00 per year for the next twelve years.

In 1959, Houston deducted $50,569.94 as "ten percent of the total of thirteen periodic payments payable over a period of thirteen years to former spouse . . . ". The Commissioner disallowed the deduction and the Tax Court upheld the Commissioner's ruling. We affirmed, holding that the $90,699.14 in non-cash assets and the $115,000.00 in cash represented a division of property. We reasoned that "[w]here there is a substantial payment, such as this, which comes soon after the entry of the divorce decree, we think it is not unreasonable to conclude that a property settlement was intended." 442 F.2d at 42.

In the instant case however the question at issue concerns whether the annual payments—not a lump sum transferred imme-

---

4. "[T]he payments made by reason of the absolute obligation to purchase the new home would not be affected by such factors as remar-riage or change in economic status." 418 F.2d at 171.

diately after the divorce—were intended as support or as a division of assets. These payments are more closely akin to the $25,000.00 annual payment in *Houston,* which this Court impliedly considered deductible by Houston and income to Schwab. Our opinion states: "[w]e think that the Tax Court correctly noted that the 1959 payment *was distinguished from the later* [$25,000.00] *amounts* both by its size and by the time of payment." 442 F.2d at 42. It is clear that both the Tax Court and this Court considered the fixed annual payments to have been intended as support.

■ Jean also challenges the Tax Court's finding that the payments were "periodic payments" within the meaning of Section 71(a) and Section 71(c). She contends that the decree of divorce, entered October 4, 1967, did not become final under Wisconsin law until October 4, 1968. Since the last payment will be due April 4, 1978, she argues that full payment of the principal sum will be paid over a period ending less than ten years from the date of the decree, and that, therefore, the payments received constitute "installment payments" under Section 71(c)(1), rather than "periodic payments" under Section 71(a).

Under Wisconsin law, the parties to a divorce may not remarry for a period of one year subsequent to issuance of the decree. On this basis, Jean characterizes the decree as "interlocutory" until one year following its issuance, at which point it becomes "final". During the period of one year following the issuance of the decree, either party may appeal, and the court may vacate or modify the judgment as it affects the marital status of the parties.

For the purposes of Section 71, we find that the decree is final at the time of its issuance. The fact that either party may appeal is indicative of its finality, as is the fact that the court may vacate the judg-

ment within that one year period and "restore the parties to the marital relation that existed before the granting of such judgment." Wis. Stats. of 1967, Sec. 247.37(2). Moreover, obligations imposed upon the parties under the decree become effective at the time it is granted.

For the foregoing reasons, we hold that the Tax Court correctly construed the payments as "periodic payments received . . . in discharge of . . . a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree . . . .". Accordingly, they constitute gross income to Jean and are deductible under Section 215(a) by William.

■ We further agree with the Tax Court's finding that the premiums paid by William on the term life insurance policy should not be included in Jean's gross income and therefore are not deductible by William. That the premium payments satisfy the requirements of Section 71(a) is undisputed in all but one respect [5]: whether the payments were constructively received by Jean, i. e. whether she received in any of the years under consideration an ascertainable economic benefit through the payment by William of premiums.

The divorce decree requires William to purchase term insurance which, unlike whole insurance, entitles the owner-beneficiary, Jean, to no ascertainable benefits other than the proceeds of the policy upon William's death. Furthermore, her entitlement to the proceeds is defeasible by her remarriage, death or attainment of age 65 prior to William's death.

We find that the benefits derived by Jean through the payment of premiums by William are no greater than the benefits received by the wife in *Seligmann v. Commissioner,* 207 F.2d 489 (7th Cir. 1953). Under

---

**5.** As the Tax Court noted, the "parties do not contend that these premium payments are not payments made in discharge of a legal obligation which because of the material relationship is incurred by William. The premium payments are imposed under a decree. . . . The payments are periodic as William is obliged to pay them over the lesser of his or Jean's life, an indefinite period, or 1987. The parties recognize Jean did not actually receive the premiums paid and the dispute centers on whether the premium payments were constructively received by Jean within the meaning of Section 71(a)." 62 T.C. at 396.

*Seligmann,* and for the reasons set forth in the opinion of the Tax Court herein, 62 T.C. 377, 395–400, we find that the premiums paid by William on the term life insurance policy are not includable in the gross income of Jean and are not deductible by William.

For the foregoing reasons, the decision of the Tax Court is affirmed.

Affirmed.