SANFORD L. BESHEAR, JR. AND CYNTHIA A. BESHEAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beshear v. Comm'r
Docket No. 15980-87 United States Tax Court
T.C. Memo 1990-544; 1990 Tax Ct. Memo LEXIS 598; 60 T.C.M. (CCH) 1032; T.C.M. (RIA) 90544; October 22, 1990, Filed *598 Decision will be entered under Rule 155. Sanford L. Beshear, Jr. and Cynthia A. Beshear, pro se. Edsel Ford Holman, Jr., for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows:  Additions to Tax, I.R.C. Sec. [1] *601 Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1983
$ 15,373  $ 768.65  *
$ 3,843.25
1984
2,434  121.70  *
--
1985
810  40.50  *
--
After concessions, the primary issues for decision are: (1) Whether petitioners are entitled to a bad debt deduction with respect to delinquent payments of $ 128,150 due from petitioner Cynthia Beshear's former husband; (2) whether $ 12,240 in capital gain qualifies for nonrecognition treatment under section 1033 or section 1034; (3) whether certain payments represented alimony or a nontaxable division of marital property; and (4) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) and section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Rison, Arkansas, at the time they filed their petition in this case. Petitioner Cynthia Ann Tinnon Beshear ("petitioner") was married to her first husband Edward J. Cunningham ("Cunningham") on January 7, 1964. At the time of their marriage, Cunningham was in the United States Navy. As a result of an automobile accident in December *602 of 1962, Cunningham spent approximately one year in a hospital. Complications from the accident resulted in Cunningham's medical discharge from the Navy in 1964. From 1966 through 1973, Cunningham and petitioner were enrolled in college and graduate degree programs. During these years, petitioner worked at various jobs to help with the expenses of their education and marriage. In 1971, petitioner received a degree in Business Education and a Secondary Education Teaching Certificate. In 1972, petitioner also acquired a real estate sales license. In 1973, Cunningham received his law degree. In the fall of 1973, upon the death of petitioner's father, Cunningham accepted a position as in-house counsel for First State Building and Loan Association ("First State") located in Mountain Home, Arkansas. First State previously had been a client of the law firm of petitioner's father. Petitioner worked in Mountain Home for the North Central Board of Realtors establishing a multiple listing service. Petitioner became involved in local Arkansas politics. She joined the League of Women Voters, and she was active in other civic organizations. In late 1977, after Cunningham had been *603 assured that he would retain First State as a client, Cunningham and another attorney established their own law firm. Petitioner was the law firm's unpaid bookkeeper until the summer of 1980. Petitioner notified several of her father's former clients of her husband's new firm. Petitioner was involved in locating and negotiating the purchase of suitable real estate on which a building for Cunningham's new law office could be constructed. She assisted in designing the building, decorating the interior, and securing a 99-year lease on an adjacent lot for parking space. Much of the furniture and many books for the law firm's library came from petitioner's father's former law office. Cunningham's law firm opened for business in 1978. The law firm prospered, in part because of work it performed for former clients of petitioner's father. During 1977 and 1978, the marriage between petitioner and Cunningham began to have serious problems. Alleged infidelity, drinking, and emotional and physical sickness contributed to the problems. Petitioner consulted an attorney who was experienced in tax law, and petitioner filed for a divorce and for a division of marital property. A divorce *604 was granted on September 2, 1980. A property settlement agreement ("the Agreement") between petitioner and Cunningham was incorporated into the divorce decree. The Agreement reads, in part -- WHEREAS, the parties desire to enter into a full and complete settlement with respect to the division of their property and payment of alimony to the Wife; and, WHEREAS, said settlement is intended to fully and finally settle all marital rights of Wife in and to the property of Husband, all Wife's right to support from Husband, and all rights of Husband in and to the property of the parties * * *.
In negotiations incident to the divorce and property settlement agreement, petitioner and Cunningham allegedly added up the value of their marital property, subtracted their marital debts, and then apportioned the assets and debts so that each received half the net value of the marital property. The record in this case, however, does not reveal the value of the individual assets, and it is not possible to ascertain from the record whether the marital property was in fact divided evenly. The marital property -- most of which was held by petitioner and Cunningham during *605 the marriage as joint tenants -- was described generally in the Agreement and divided between petitioner and Cunningham as follows: Petitioner:
All furniture, furnishings, household effects, personal effects, jewelry, and china not specifically set aside for Cunningham; A 1978 Lincoln automobile; A 1978 Chevrolet pickup truck; The marital interest in a river cabin; Parcels of real property located in Village Green and Sugar Hill, Arkansas; All real property held solely in petitioner's name, including a farm in Texas and the house in which petitioner was living in Mountain Home [referred to hereafter as "the 6th Street property"]; The marital interest in a 17-foot runabout boat; Stock in Peoples Bank of Mountain Home, Arkansas; and All other property of the marriage not specifically set aside for Cunningham.
Cunningham:
A Corvette automobile; The marital interest in a four-plex apartment building; The marital interest in the law firm and associated office building; and All personal effects, clothing, jewelry, and furniture in Cunningham's possession.
*606 Cunningham agreed to assume all joint debt obligations relating to certain parcels of real property and to the law practice, and Cunningham agreed to pay petitioner what was expressly referred to in the Agreement as "periodic alimony" in installments of $ 350 per month for 60 months, followed by $ 500 per month for 120 months, and $ 750 per month for 60 months (a total of $ 126,000 over 20 years). The Agreement stated that Cunningham's obligation to make the periodic "alimony" payments was not to be altered by any subsequent court action and was to survive his death and petitioner's remarriage, but would terminate upon petitioner's death. On September 3, 1980, Cunningham executed a promissory note in favor of petitioner in the principal amount of $ 162,000. The note reflected Cunningham's debt obligations under the Agreement to pay petitioner the periodic "alimony" payments over 20 years in the cumulative total amount of $ 126,000. The additional $ 36,000 reflected in the principal amount of the promissory note apparently reflected Cunningham's obligation to pay off certain of the debt obligations on some of the parcels of real property that were held jointly during *607 the marriage. In late 1980, petitioner listed for sale for $ 110,000 her 6th Street property in Mountain Home. In 1981 petitioner moved to Little Rock, Arkansas, and Cunningham remarried. Cunningham made the periodic "alimony" payments called for under the Agreement until June of 1982. On June 27, 1982, Cunningham died. He was 39 years of age. In July of 1982, petitioner, who was then living in North Carolina, returned to Mountain Home to file a claim against Cunningham's estate for $ 123,200, reflecting the remaining "alimony" payments in the cumulative amount of $ 119,150 that were due her over the subsequent 18 years and additional amounts relating to balances due on the other debt obligations Cunningham had assumed under the Agreement. In August of 1982, petitioner started law school. In October, petitioner's uncle died, and petitioner fell into a depression and withdrew from school. In November, petitioner suffered a nervous breakdown and spent time in several hospitals until released in late 1982. In December of 1982, petitioner's 6th Street property in Mountain Home was still on the market. She had reduced the original asking price of *608 $ 110,000 to $ 65,000. On January 19, 1983, the house on the 6th Street property burned down. In 1983, petitioner received proceeds from insurance on the house, which the parties have stipulated resulted in petitioner's realization of $ 12,240 of capital gain. In May of 1983, petitioner became engaged to be married to petitioner Sanford L. Beshear ("Beshear"), who also was an attorney. She moved to Rison, Arkansas, and began helping Beshear organize his law practice. By warranty deed dated May 16, 1983, Beshear transferred to petitioner and himself, as joint tenants, certain real property, including his home. The transfer was made in consideration of love and affection, and not with the understanding that petitioner would invest any of her separate funds in the property. Petitioner and Beshear were married on July 6, 1983. Between May 16, 1983 and October 11, 1983, petitioner wrote several checks totaling $ 12,017 to Beshear. The checks were deposited into Beshear's law office bank account. During the same months, petitioner also paid on Beshear's behalf at least $ 15,000 to a number of Beshear's creditors. The funds petitioner used to pay Beshear's expenses *609 came from the insurance proceeds relating to the 6th Street property and from the proceeds of a 1983 sale of her farm in Texas. In 1983, petitioners purchased a Nikon 35-millimeter camera, a videocamera, and a videocassette recorder. The camera equipment was used frequently in Beshear's law practice, and for charitable and other civic events. During 1983, petitioner made several trips by car to Mountain Home to consult with her banker, broker, and other financial advisers. During 1983, petitioner drove her automobile approximately 1,000 miles for investment-related business purposes. In 1984, the probate court determined that the present value of petitioner's claim against Cunningham's estate was $ 34,926.18. Cunningham's estate, however, did not have sufficient assets to meet all of its obligations. Petitioner's pro rata share of the net estate was $ 8,512, and this amount was distributed to petitioner in 1984. On their 1983 joint Federal income tax return, petitioners claimed a bad debt deduction of $ 128,150 relating to the unpaid principal due on Cunningham's promissory note in favor of petitioner, a depreciation deduction relating to the camera *610 equipment of $ 449, and a miscellaneous expense deduction of $ 2,050 relating to the alleged business use of petitioner's automobile. Petitioners did not report on their 1983 tax return any portion of the $ 12,240 in capital gain relating to the insurance proceeds received as a result of the fire that destroyed petitioner's 6th Street property in Mountain Home. On their 1984 joint Federal income tax return, petitioners claimed additional depreciation and an investment tax credit relating to the camera equipment, and petitioners did not report the $ 8,512 received in 1984 from Cunningham's estate. On their 1985 Federal income tax return, petitioners claimed additional depreciation relating to the camera equipment. On audit, respondent disallowed the entire $ 128,150 bad debt deduction claimed on petitioners' 1983 tax return. Respondent determined that the capital gain of $ 12,240 that petitioners realized in 1983 in connection with the insurance proceeds relating to the fire that destroyed the 6th Street property was taxable. Respondent also recomputed petitioners' allowable business mileage deduction and disallowed all depreciation deductions and the investment *611 tax credit relating to the camera equipment on petitioners' 1983, 1984, and 1985 tax returns. Lastly, respondent determined that the $ 8,512 received by petitioner from Cunningham's estate in 1984 represented alimony and was taxable to petitioner. OPINION Bad Debt Deduction
Under section 166(a), debts that become wholly worthless within the year are deductible. The debts must be bona fide and must have arisen from debtor-creditor relationships based upon valid and enforceable obligations to pay fixed or determinable sums of money. Sec. 1.166-1(c), Income Tax Regs.Section 166(d) provides that nonbusiness bad debts of noncorporate taxpayers will be deductible as short-term capital losses. The amount of allowable bad debt deductions is governed by the adjusted bases of the debts as determined under section 1011. Sec. 166(b); Long v. Commissioner, 96 F.2d 270, 272 (9th Cir. 1938), affg. 35 B.T.A. 479 (1937), cert. denied 305 U.S. 616 (1938); *612 Perry v. Commissioner, 92 T.C. 470, 478 (1989), affd. without published opinion 912 F.2d 1466 (5th Cir. 1990); Swenson v. Commissioner, 43 T.C. 897, 898 (1965).
The amount of unpaid and overdue wages, salaries, fees, rents, and other similar items cannot be claimed as worthless debts by the taxpayers to whom they are owed unless they have been included in the taxpayers' income in the year in which the bad debt deductions are claimed or in prior years. Sec. 1.166-1(e), Income Tax Regs.
Petitioner argues that she is entitled to a bad debt deduction in connection with the $ 128,150 balance apparently due on Cunningham's debt obligations to her. Petitioners, however, have not offered any credible evidence to support a finding that petitioner had any tax basis in the total cumulative "alimony" payments owed to her or to establish what petitioner's tax basis was in the other debts Cunningham owed. Court decisions establish that in a divorce situation where the payor ex-spouse fails to make alimony or child support payments, the taxpayer ex-spouse has no tax basis in the unpaid alimony or support *613 obligations and will not be allowed a bad debt deduction with respect thereto. Long v. Commissioner, supra at 272; Swenson v. Commissioner, supra at 899. On the record before us, we hold that petitioners are not entitled to a bad debt deduction for any of the outstanding debt obligations Cunningham owed petitioner under the Agreement. Nonrecognition of Gain Under Sections 1033 and 1034
Section 1033, among other things, allows for the nonrecognition of gain if property, as a result of destruction in whole or in part, is involuntarily converted, but only to the extent the taxpayer purchases or otherwise invests in other similar or related property within the specified time for replacing the destroyed property. Sec. 1033(a)(2)(A). Section 1034 provides for the nonrecognition of gain from the sale of a taxpayer's principal residence if within two years the taxpayer purchases or otherwise invests in a new principal residence the cost of which exceeds the adjusted sales price of the old principal residence. It is not completely clear on what factual basis petitioners claim that *614 the $ 12,240 in capital gain relating to the insurance proceeds from the destruction of the 6th Street property qualifies for nonrecognition of gain under sections 1033 or 1034. Apparently, petitioners claim that because petitioner in 1983 contributed over $ 27,000 to Beshear's law office account or to pay some of Beshear's creditors petitioner should be regarded as having reinvested in Beshear's home in which she did acquire an interest just prior to her marriage to Beshear. Because the 6th Street property was not sold but was destroyed by fire, only section 1033 could possibly apply to the facts before us. Petitioners, however, are not entitled to nonrecognition of the $ 12,240 in capital gain under section 1033 because petitioners have not established that petitioner purchased other similar or related replacement property with the insurance proceeds. The funds transferred to Beshear's law office account and the funds paid to Beshear's creditors were used for a number of purposes and no accounting or allocation has been offered to establish how much, if any, was used to purchase petitioner's interest in Beshear's home. Petitioners have conceded that there was no agreement *615 between them that petitioner would invest any of her money in return for the interest she received in Beshear's home. The deed states clearly that the joint tenancy interest in the home was given to petitioner solely in consideration of love and affection, and petitioners have not disputed this fact. We hold that petitioners must recognize the $ 12,240 in capital gain relating to the insurance proceeds received on the 6th Street property. Alimony or Property Settlement
Under section 71(a), as in effect for the years in issue, periodic payments received by a taxpayer from her former husband are treated as taxable income if they are received in discharge of a legal obligation imposed on the former husband under a divorce decree because of the prior marital or family relationship. Such payments are commonly referred to as alimony. The requirement that the payments be received because of the marital or family relationship is based on the premise that alimony payments are received for the support and maintenance of the wife, rather than in satisfaction of vested property rights. *616 Wright v. Commissioner, 543 F.2d 593, 597 (7th Cir. 1976), affg. 62 T.C. 377 (1974); Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Warnack v. Commissioner, 71 T.C. 541, 550 (1979); Bishop v. Commissioner, 55 T.C. 720, 724 (1971); secs. 1.71-1(b)(4) and 1.71-1(d)(3)(i)(b), Income Tax Regs. The labels assigned by the parties to the payments are relevant, but they are not determinative of the nature of the payments as either taxable alimony or as a nontaxable distribution of marital property. Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975); Thompson v. Commissioner, 50 T.C. 522, 525 (1968); Bardwell v. Commissioner, 38 T.C. 84, 89-90 (1962), affd. 318 F.2d 786 (10th Cir. 1963). The issue is factual and requires an examination of all of the relevant facts and circumstances. *617 Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976); Hesse v. Commissioner, supra at 691. Some of the factors relevant to the determination of whether payments received pursuant to a divorce decree represent taxable alimony or a nontaxable division of marital property include: (1) The intention of the parties; (2) whether the taxpayer surrendered valuable and vested property rights in exchange for the payments; (3) whether the payments were subject to contingencies such as the death or remarriage of the taxpayer, or the death or changed economic circumstances of the former husband; (4) whether the payments were secured; (5) whether the value of all of the property and payments awarded to the taxpayer equaled approximately one-half of the value of the marital property; (6) whether the support requirements of the taxpayer were taken into account in determining the amount of the payments; and (7) whether a support provision was provided in the divorce decree or agreement independent of the payments in question. *618 Beard v. Commissioner, supra at 1284-1285, and cases cited. Petitioner claims that she and Cunningham intended to and did divide all of their marital property equally in conjunction with their divorce and that such equal division of necessity took into account the total of the "alimony" payments petitioner was to receive over the subsequent 20 years. No evidence, however, was offered as to the value of the various properties that would support a finding that the periodic payments were merely part of the division of the marital property. Petitioner alleges that she made significant pecuniary and nonpecuniary contributions to her marriage with Cunningham and to his law practice and that she therefore was entitled to receive property (namely, the "alimony" payments) in exchange for these contributions. It has not been established, however, that petitioner had an identifiable, vested property interest in Cunningham's law practice or in his other separately owned property. Petitioner apparently had a joint property interest in the four-plex and in Cunningham's law office building, both of which went to Cunningham, but the record does *619 not disclose the value of these properties either absolutely or in relation to the properties petitioner received such as the river cabin and the lots in Village Green and Sugar Hill. The payments at issue here were periodic in nature. They were designated by petitioner, by Cunningham, and by their attorneys as alimony in the property settlement agreement. They were to cease upon petitioner's death, and they were not secured. Further, no separate provision was made in the Agreement for petitioner's periodic support requirements other than the payments designated as "alimony." Based on the evidence before us, we hold that the $ 8,512 petitioner received in 1984 from Cunningham's estate represented a periodic payment in the nature of an alimony or support payment, that it was made in discharge of a legal obligation imposed on Cunningham because of the marital relationship, and that it is includable as alimony in petitioner's income for 1984. Depreciation and Investment Tax Credit
For the years at issue, an investment tax credit is available under section 46(a) as a certain percentage of "qualified investments." *620 Section 46(c) defines "qualified investments" as the applicable percentage of the basis of "section 38 property" placed in service during the year. "Section 38 property," in relevant part, is defined in section 48(a)(1) as tangible property subject to depreciation that is used in a trade or business or held for the production of income. If property is used less than 100 percent of the time in a trade or business or for the production of income, the property may qualify as section 38 property to the extent of the qualifying usage. Sec. 1.48-1(b)(2), Income Tax Regs. Petitioners bear the burden of proving the extent to which the property qualifies for depreciation or for an investment tax credit. Rule 142(a). See Everhart v. Commissioner, 61 T.C. 328, 331 (1973). Petitioners argue that they are entitled to the investment tax credit and depreciation deductions with respect to the Nikon camera, the VCR, and the videocamera. Petitioners, however, admit that the equipment was frequently used for nonbusiness as well as business purposes and they do not offer any evidence of the percentage of business use. In light of all the evidence and under *621 the principle enunciated in Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), we hold that petitioners used the equipment 35 percent for business purposes and are entitled to depreciation and investment tax credit accordingly. Automobile Expense
Under section 212, individual taxpayers may deduct ordinary and necessary expenses paid for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Petitioners argue that they are entitled to a deduction of $ 205 for 1983 with respect to petitioner's travel of 1,000 miles to and from Mountain Home to consult with her financial advisers and to attend to other business. Based on our findings concerning the business use of petitioner's automobile in 1983, we conclude that petitioners are entitled to the claimed $ 205 deduction. Section 6653(a)(1) and (2), Additions to Tax forNegligence
Additions to tax under section 6653(a) apply where any part of a tax deficiency is due to negligence or to intentional disregard of rules or regulations. Negligence is defined as the failure *622 to use due care or to do what a reasonable and ordinarily prudent person would have done under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination is presumptively correct and the burden is on petitioners in this case to prove that they were not negligent. Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part a Memorandum Opinion of this Court; Luman v. Commissioner , 79 T.C. 846, 860-861 (1982). Negligence additions are not appropriate where errors on taxpayers' returns are due to honest misconceptions of the law or to understandable differences of opinion between taxpayers and respondent. Standish v. Commissioner, 4 T.C. 995, 1001 (1945), affd. 154 F.2d 1022 (9th Cir. 1946); Jenkins v. Commissioner, T.C. Memo. 1967-257,affd. on another issue 418 F.2d 1292 (8th Cir. 1969). Petitioners here consulted a tax attorney and relied on accountants in the preparation of their tax returns. They made a good faith effort to comply *623 with the tax laws as they understood them, and there is no evidence that they purposefully disregarded any rules or regulations. Based on our evaluation of the evidence, particularly the testimony of petitioner, we hold that petitioners are not liable for additions to tax under section 6653(a)(1) and (2). Section 6661, Addition to Tax for Substantial Understatement
Section 6661 imposes an addition to tax if there is a substantial understatement of income tax in any given year. An understatement is defined as the excess of the amount of tax required to be shown on the tax return over the amount of tax actually shown on the return as filed less any rebates. A substantial understatement is one that exceeds the greater of either 10 percent of the tax required to be shown on the return or $ 5,000. In calculating understatements under section 6661, items for which there is substantial authority or with respect to which all relevant facts were adequately disclosed in the tax return or in a separate statement attached to the tax return are not to be considered. Sec. 6661(b)(2)(B). On their 1983 income tax return, petitioners reported an income tax liability *624 of zero. Petitioners have not established that there was substantial authority in support of that computation. Burwell v. Commissioner, 89 T.C. 580, 595 (1987). Merely listing the $ 128,150 alleged bad debt deduction on their tax return without further elaboration does not constitute adequate disclosure. We hold that petitioners are liable for the addition to tax under section 6661 for 1983. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules and regulations.↩